SOUTHERN CITIES DISTRIBUTING COMPANY *v.* CARTER.

Opinion delivered June 15, 1931.

6

*Willis B. Smith* and *Arnold & Arnold,* for appellants.

*J. M. Carter* and *B. E. Carter,* for appellee.

KIRBY, J., (after stating the facts). The referendum petitions were filed at a proper time. The initiative and

referendum amendment to the Constitution provides: "Municipalities may provide for the exercise of the initiative and referendum as to their local legislation. General laws shall be enacted providing for the exercise of the initiative and referendum as to counties. * * * In municipalities and counties, the time for filing an initiative petition shall not be fixed at less than sixty (60) nor more than ninety (90) days before the election at which it is to be voted upon; for a referendum petition at not less than thirty (30) nor more than ninety (90) days after the passage of such measure by a municipal council; nor less than ninety (90) days when filed against a local or special measure passed by the General Assembly." The amendment provides the time for filing a referendum petition at "not less than thirty (30) days nor more than ninety (90) days after the passage of such measure by a municipal council." This does not mean, of course, that the petition for a referendum cannot be filed less than 30 days after the passage of the measure sought to be referred, but only that the city must allow at least 30 days after the passage of the measure for the filing of a referendum petition thereon, and cannot allow more than 90 days. The evidence does not show that the city of Texarkana had attempted to provide in any manner for the exercise of the referendum on its local measures. It is true the referendum petitions were filed against the resolution of the city council, adopted on May 30, 1930, approving the increased rates, on June 27, 1930, less than 30 days after the adoption of such measure but they remained on file and were on file after 30 days after the passage of the gas rate resolution, and were passed upon and certified by the city clerk on the 31st day after the passage of the resolution, as containing sufficient signatures of qualified electors to authorize the referendum petitioned for. The referendum petitions, although they could not have been required to be filed in less than 30 days after the passage of the measure sought to be referred, were in no wise invalidated by having been sooner

filed. Although filed before the expiration of the 30 days allowed, they remained on file with the proper officer, who duly certified the sufficiency thereof after examination made on the 31st day from the passage of the resolution, and were therefore in all respects as valid and effective as though they had been filed on the 30th day thereafter. It may be that, after the signing of the petition, and before the expiration of the 30 days allowed for the filing thereof, any person who chose to do so could have insisted upon his signature being withdrawn therefrom; but where such petition was filed on time, and after its sufficiency was duly certified by the proper officer, any such signature could not be withdrawn as a matter of personal preference, nor without a sufficient showing that such signature had been fraudulently obtained. It then became a matter of public concern and part of the procedure necessary to invoke the referendum in determining the justness and reasonableness of the rates allowed to be charged under the resolution by the appellant company by approval or rejection of the resolution fixing rates for the supply and distribution of gas to the people within the city granting the franchise therefor. It is not questioned that the petitions for the referendum were sufficient, containing the number of qualified voters required under the Constitution before the names were wrongfully withdrawn and allowed to be stricken off by the city council on July 8, 1930, after the expiration of the time for filing thereof. The council then, of course, had no right to refuse to grant the petition and deny the referendum on any such grounds.

It is also true that no objection was made to the decision of the city clerk, or proceedings taken in the chancery court which only can review it, to challenge the correctness of the city clerk's decision and determination of the sufficiency of the petition for any reason— because not signed by the required number of qualified electors, or of not having a correct copy of the ordinance, the measure sought to be referred, attached to it—and

such objection cannot now be made in this suit, or in any other than the chancery court.

The amendment provides that, if the sufficiency of any petition is challenged, "such cause shall be a preference cause and shall be tried at once," but the failure to decide it "shall not prevent the question from being placed upon the ballot at the election named in such petition, nor militate against the validity of such measure, if it shall have been approved by a vote of the people." Amendment No. 5, Applegate's Constitution of Arkansas, 209.

It is next insisted that the resolution granting the increase in gas rates is not subject to the referendum, but this contention is without merit. The appellant company succeeded to all the rights of the old Southwestern Gas & Electric Company for supplying and distributing gas in the city of Texarkana, the transfer to it being recognized by the ordinances of the city and by the statute, act 248 of 1929, p. 1196.

The constitutional amendment provides: "Every extension, enlargement, grant, or conveyance of a franchise * * * whether the same be by statute, ordinance, resolution or otherwise, shall be subject to referendum and shall not be subject to emergency legislation."

In *Terral* v. *Arkansas Light & Power Co.*, 137 Ark. 523, 210 S. W. 139, a case involving the construction of act 135 of 1913, relative to the fixing of rates by a public utility in the city of Arkadelphia, a petition having been filed for referendum upon the ordinance granting an increase thereof, the court held that the fixing of such rates was not an exercise of the police power within the meaning of the statute, but the granting or extension of a franchise that was subject to the referendum. This constitutional amendment expressly provides: "Every extension, enlargement, grant, or conveyance of a franchise * * * whether the same be by statute, ordinance, resolution or otherwise, shall be subject to referendum and shall not be subject to emergency legislation." Such

language necessarily includes a resolution of the city council granting an increase of rates to the public utility for supplying and distributing gas to the people of the city under its contractual rights to do so, being but an extension or enlargement of its franchise. Moreover, such resolution is clearly included in the word ''measure'' as defined in the constitutional amendment, which states: ''* * * includes any bill, law, resolution, ordinance, charter, constitutional amendment or legislative proposal or enactment of any character.'' Amendment also provides: ''The initiative and referendum powers of the people are hereby reserved to the legal voters of each municipality and county as to all local, special and municipal legislation of every character.''

The making or fixing of rates is an act legislative and not judicial in kind within the meaning of this constitutional amendment. *Prentis* v. *Atlantic Coast Line Co.,* 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150; *Bacon* v. *Rutland Railroad,* 232 U. S. 134, 34 S. Ct. 283, 58 L. Ed. 538; *Keller* v. *Potomac Electric Company,* 261 U. S. 428, 43 S. Ct. 145, 67 L. Ed. 731; *Van Buren Water Co.* v. *Van Buren,* 152 Ark. 83, 237 S. W. 693; *Clear Creek Oil & Gas Co.* v. *Ft. Smith Spelter Co.,* 148 Ark. 260, 230 S. W. 897; *Coal District Power Co.* v. *Booneville,* 161 Ark. 638, 256 S. W. 871.

Although a right of appeal was provided by the law for any person aggrieved by any rate fixed by a municipal council or city commission, or by any order or ordinance made in pursuance of such law, for a review of the action of the municipal council or city commission, as to its legality, validity, fairness or reasonableness, it is not an exclusive remedy and did not prevent the proper application of the referendum to the resolution fixing the rates, nor did it amount to an enactment by the council of local legislation contrary to any general law of the State, within the meaning of such amendment. The purpose and effect of the referendum is only to allow the approval or rejection of the resolution and rates fixed there-

in by the council by vote of the people, who are not expected, of course, to establish a reasonable rate or rates in such referendum, but only to lend their approval to such rates as are fixed or proposed, or reject them by their votes.

The Texas cases relied upon by appellant, apparently holding contrary to our own decisions, are entitled to little weight in consideration and construction of the provisions of our dissimilar constitutional amendment, which is broad enough to and does grant the power of a referendum of the resolution or ordinance, which is but an extension or enlargement of appellant company's franchise.

The granting of a referendum on the resolution increasing the rates allowed to be charged by appellant company was not in effect a passage of a law or ordinance impairing any obligations of the contract or franchise of appellant company. Neither would the referendum of such ordinance, unfavorably acted upon by the electors, have an effect to deprive said company of any of its property or rights without due process of law. There is no evidence of any act or conduct of the city indicating the surrender or release of its right to regulate the rates charged by public utilities to its citizens for furnishing gas. *Milwaukee Electric Rd. Co.* v. *Railroad Commission*, 238 U. S. 174, 35 S. Ct. 820, 59 L. Ed. 1254.

The General Assembly had power, even under the Constitution permitting the revocation and annulment of charters found to be injurious to the citizens of the State, to permit the change and amendment of any franchise granted by any city attempting to bind itself irrevocably to any agreed schedule of charges or rates, regardless of the necessity that might exist for the regulation thereof. Sec. 6, art. 12, Const. of 1874; *Ry. Company* v. *Gill*, 54 Ark. 101, 15 S. W. 18, 11 L. R. A. 452; *Id.* 156 U. S. 649; *Spring Valley Water Works* v. *Schottler*, 110 U. S. 347, 4 S. Ct. 48, 28 L. Ed. 173; *Covington & Lexington Turnpike Road Co.* v. *Sandford*, 164 U. S. 578, 17 S. Ct. 198, 41 L. Ed. 560.

It follows from what has been said that the judgment of the circuit court in issuing the mandamus to compel the granting of the referendum upon the resolution or ordinance of the city increasing the rates allowed to be charged the consumers in the distribution of gas was correct, and the judgment must be affirmed. It is so ordered.