RUDEN, Superintendent of Banks, Plaintiff, v. RUDEN, et al, Defendants.

(244 N. W. 775.)

(File No. 7414. Opinion filed October 15, 1932.)

*F. J. Benthin,* of Hayti, and *R. J. Lyons,* of Madison, for Plaintiff.

*T. B. Thorson,* of Rapid City, for Defendants.

CAMPBELL, P. J. The Bank Guaranty Law of this state, which originated as article 3, c. 102, Laws 1915, and was in substance abandoned by chapter 54, Laws 1927, has been frequently before this court in various particulars. The history of the law and its operations were quite extensively reviewed in State ex rel Sharpe v. Smith (1931), 58 S. D. 22, 234 N. W. 764.

The law contemplated the creation and maintenance of a fund which would secure the payment of all deposit claims in case of the failure of any state bank. It provided that, in the case of failure of any state bank, the superintendent of banks should ascertain the amount necessary to pay unsecured depositors and holders of exchange in good faith in full, and should certify the same to the depositors' guaranty fund commission whereupon such amount

should be paid out of the guaranty fund. The law further provided for the building up of the fund to a fixed maximum and its maintenance at not less than a fixed minimum by annual assessments against state banks to be placed to the credit of the guaranty fund in February of each year. It likewise provided that, if, upon the failure of any state bank, there should not be a sufficient amount on hand to the credit of the guaranty fund to pay the claims of deposit creditors, the guaranty fund commission should issue to deposit creditors whose claims were properly certified to it by the superintendent of banks a certificate of indebtedness against the guaranty fund drawing interest at 5 per cent payable on the 1st day of March next succeeding (that is, at a time when presumptively the fund would have been sufficiently built up by the February assessment credits to meet the certificates). The story of the breakdown of the guaranty fund theory and the complete failure of the law in actual operation under the conditions it was compelled to meet has been set out in detail in State ex rel v. Smith, supra. The guaranty fund was able to make payment in full to depositors of all state banks which failed from the beginning of the operation of the law down to the failure of the Stockgrowers' Bank of Ft. Pierre, S. D., which closed on March 16, 1923. Then for the first time the guaranty fund was insolvent in the sense that it did not have sufficient money on deposit to its credit in member banks to pay the claims against it arising out of the Stockgrowers' Bank failure. The claims of deposit creditors of the Stockgrowers' Bank aggregated a little over half a million dollars, and to those deposit creditors were issued the first certificates against the guaranty fund, due and payable March 1, 1924. From that point forward accumulating liabilities against the fund by reason of numerous failures of state banks greatly exceeded the annual accretions thereto, and the insolvency of the fund became rapidly and constantly more hopeless. The fund made no payment to deposit creditors of Stockgrowers' Bank of Ft. Pierre or any bank subsequently failing, excepting an unauthorized dividend in July, 1924, upon the certificates issued arising out of the insolvency of the Stockgrowers' Bank. See State ex rel Driscoll v. Smith (1925) 49 S. D. 106, 206 N. W. 233. By the time the Legislature met in 1925, it was clearly apparent that the guaranty fund would never be able to pay the existing demands

against it, and that such demands were increasing almost daily at a vastly greater rate than the assets of the fund. The Legislature at that session passed chapter 100, Laws 1925, which, among other things, provided in substance that money in the guaranty fund should be distributed by prorating the same upon outstanding certificates of indebtedness in proportion to the unpaid principal amounts thereof after crediting proceeds of liquidation of the individual bank without priority by reason of due date. The subsequent history of the matter is set out in detail in State ex rel Sharpe v. Smith, supra, and need not be here repeated. It is sufficient for our present purposes to say that distribution of the balance in the guaranty fund has not been made; that the amount available for distribution is something less than $1,000,000, and that outstanding certificates of indebtedness exceed $35,000,000.

The foregoing resume sufficiently presents the general situation to permit a proper understanding of the instant case, and we turn now to the facts more particularly here involved, most of which are determined by the findings and judgment of the circuit court hereinafter referred to.

The State Bank of Winfred closed on May 27, 1922. All admitted deposit claims against said State Bank of Winfred were presently paid in full by the guaranty fund commission in the following manner. Very shortly after the closing of the State Bank of Winfred, a banking corporation was organized and chartered known as Bank of Winfred. By agreement between the newly organized Bank of Winfred and the guaranty fund commission, the Bank of Winfred advanced upon draft of the guaranty fund commission such moneys as were necessary to pay deposit claims against the failed State Bank of Winfred upon the promise and understanding that, when the amount so necessary to be expended for that purpose was definitely determined and paid, the Bank of Winfred should be reimbursed by taking over guaranteed good assets of the failed State Bank of Winfred to the extent of $300,000, and that as to such amount above $300,000 as it might have advanced to deposit creditors of the failed State Bank of Winfred upon draft of the guaranty fund commission the guaranty fund commission would repay the Bank of Winfred in cash. The matter was ready for adjustment by December 1, 1922, at which

time the guaranty fund commission turned over to the Bank of Winfred certain assets of the failed State Bank of Winfred, and paid to it the sum of approximately $85,000 in cash. The Bank of Winfred maintained that, to reimburse it pursuant to the agreement for the moneys it had advanced on the order of the guaranty fund commission to deposit creditors of the failed State Bank of Winfred, it was entitled to receive from the Guaranty Fund Commission on December 1, 1922, the further sum of $57,-417.62. This contention being disputed, the Bank of Winfred instituted suit against the depositors' guaranty fund commission in the circuit court of Lincoln county, S. D., as a result of which findings, conclusions, and judgment were in favor of the Bank of Winfred, which judgment has now become final.

By virtue of that judgment it has now been finally adjudicated between the parties that the guaranty fund commission ought to have paid to the Bank of Winfred on December 1, 1922, out of moneys then in the guaranty fund, the sum of $57,417.62. The guaranty fund had more than enough money at that time to have made that payment to the Bank of Winfred. As a matter of fact, the guaranty fund had sufficient money to satisfy in full the claims of depositors of three state banks which failed subsequently to December 1, 1922, to wit, the Bonesteel State Bank, which closed January 13, 1923; the State Bank of Rosholt, which closed February 10, 1923, and the First State Bank of Loyalton, which closed March 16, 1923, and it did satisfy them. As we have previously stated, the guaranty fund never ceased to meet demands against it by cash payment until it issued certificates in the amount of approximately $500,000 to the depositors of the Stockgrowers' Bank of Ft. Pierre which failed March 16, 1923, but closed later in the day than did the Loyalton bank. It may also be noted that, when these, the first certificates against the guaranty fund, were issued, said fund, although its money on hand was insufficient to meet those particular demands in toto, was not wholly depleted or exhausted. As a matter of fact, there was in the guaranty fund when the Stockgrowers' Bank of Ft. Pierre closed approximately $249,000. It is stipulated in the present proceeding that on December 1, 1922, the guaranty fund had in its possession and under its control on deposit in various solvent and open state banks an amount in excess of $140,000, and that at all times from Decem-

ber 1, 1922, up to and including the institution of the present proceeding, there has continued to be available in the guaranty fund a sum in excess of $140,000. The circuit court judgment which was rendered May 10, 1930, in favor of the Bank of Winfred and against the superintendent of banks and the guaranty fund commission ordered the defendants to allow to the plaintiff Bank of Winfred as a claim against the guaranty fund as of December 1, 1922, the principal sum of $57,417.62, together with 5 per cent interest thereon from and after December 1, 1922 (amounting to $21,372.11) making a total of $78,789.73, and the judgment further set forth that it was "ordered, adjudged and decreed that said claim be and the same is hereby made senior to any and all claims against the Depositors Guaranty Fund Commission arising after said December 1, 1922; and it is further

"Ordered, adjudged and decreed that the defendants as members of the Depositors Guaranty Fund Commission, be and they hereby are directed and commanded to forthwith pay to the plaintiff said sum of $78,789.73, and that upon payment by the defendants to the plaintiff of said sum the plaintiff shall deliver to the defendants the assets described in the Findings of Fact and which were by the plaintiff tendered to the defendants in open court, together with the costs and disbursements of this action, to be hereinafter taxed and inserted by the Clerk."

No part of said judgment has been satisfied excepting that the defendants paid thereon on December 18, 1930, the sum of $12,500 in cash and the sum of $12,833.90 by offsetting a deposit then standing in the Bank of Winfred to the credit of the guaranty fund commission, making a total credit on said judgment of $25,333.90 as of December 18, 1930. The Bank of Winfred closed for liquidation on December 22, 1930. No further payments being forthcoming on the judgment, the superintendent of banks in charge of and representing the said Bank of Winfred instituted the present proceeding in mandamus to compel payment by the guaranty fund commission pursuant to the judgment of the circuit court.

It is conceded that defendants have money sufficient to pay the judgment. It is also conceded that, so far as the defendants themselves are concerned, the judgment has become final and they themselves have no defense against making the payment as ordered.

Defendants present for our consideration, however, the rights and interests of the other claimants to the moneys in the guaranty fund. Conceding the finality of the judgment, defendants nevertheless point out that it is not enforceable otherwise than by mandamus, and urge that the mandate of this court ought not to issue, under the circumstances of this case, regardless of any strict legal right of plaintiff by virtue of the provisions of the judgment, if, as a result thereof, the interests of other claimants against the fund not represented in the matter (other than as defendants may be deemed to represent them) would be seriously and adversely affected. As previously stated, money in the fund is less than $1,000,000 and outstanding certificates against it exceed $35,000,-000. We will assume for the purposes of this case that defendants may be heard to urge the interests of these certificate holders in this proceeding, and the ultimate question in the case may therefore be stated thus: Under the circumstances here presented, must plaintiff prorate equally with all other claimants against the guaranty fund, or is plaintiff entitled to some preference over certificate holders, and, if so, to what extent?

Defendants urge that the present plaintiff can have no preference against other claimants against the fund, and invoke chapter 100, Laws 1925, providing in essence for distribution of money in the fund ratably among certificate holders, and the language of this court in State ex rel Sharpe v. Smith, supra, 58 S. D. 22, 234 N. W. 764, 784, wherein we announced the view that the distribution of the assets of the guaranty fund in substance involved the distribution of an insolvent fund ratably among a vast number of claimants; that all directions or intentions originally existent in the guaranty law as to priority in payment were based on the assumption that the fund would continue solvent and would be able to ultimately discharge all obligations against it. In that case we said in part: "The only intention as to time of payment was to establish priority in time between creditors of the fund, all of whom would ultimately, according to the contemplation of the law, be paid in full. There was no intention in the law that some holders of certificates of indebtedness should be paid in full out of the fund and that others should receive nothing. At the time of the passage of chapter 100, Laws 1925, it was perfectly plain that the guaranty fund was completely and hopelessly insolvent, and could never be

made anything else. The Legislature of 1925 was justified in taking cognizance of that fact, and, in substance, by chapter 100, Laws 1925, treating the guaranty fund as an insolvent fund, and ordering distribution thereof to the claimants against the fund in proportion to the amounts of their respective claims without regard either to the issue date or due date of their respective certificates. We are therefore of the opinion that distribution from the fund must be made to all certificate holders in proportion to the amounts due and unpaid upon the principal of their respective certificates at the time of distribution."

It is to be observed that the rights purported to be dealt with by chapter 100, Laws 1925, and which were being discussed by this court in State ex rel Sharpe v. Smith, supra, were the rights of "certificate holders." The Guaranty Fund Law contemplated that certificates should be issued to persons who became entitled to payment out of the fund by reason of the fact they had been depositors in failed state banks in the event there was not sufficient money in the fund to pay them in cash. The clear intention of chapter 100, Laws 1925, was to do away with any priorities between certificate holders which might be claimed by reason of date of issue or due date of certificates. And it was the question of priority or nonpriority between claimants whose demands against the fund so originated that was being discussed and considered by this court in State ex rel Sharpe v. Smith.

Conceding that the bank guaranty fund is insolvent and should be distributed accordingly, the situation is somewhat different in some respects from the insolvency of an individual or a corporation. In the ordinary case of insolvency, general creditors have become such because of the fact that they or their predecessors in interest at some time or other advanced money or furnished goods to the insolvent or some one else justifiably relying upon his credit or promise to pay. With reference to the vast bulk of claimants against the bank guaranty fund, however, that is not the case. It is perhaps anomalous to term such claimants creditors at all. So far as they are concerned, the bank guaranty fund was merely a fund in the nature of an insurance fund created by virtue of the police power of the state to which they were entitled to look in certain contingencies by virtue of statute. As depositors in state

banks which failed, they were entitled, under certain circumstances, to look to the guaranty fund for the payment of their bank deposits solely because the statutes so decreed. So far as they were individually concerned, they themselves had never directly placed in or advanced to or for the guaranty fund any money or other thing of value. Their claim against the guaranty fund arose, not because of any transaction between them and the guaranty fund creating the relation of creditor and debtor, but solely by legislative fiat.

The present plaintiff stands in a very different situation. The nature and origin of his claim against the guaranty fund is entirely dissimilar to that of bank depositor claimants. It has been adjudicated by a court of competent jurisdiction, whose determination is not now in any respect open to question, that plaintiff has a claim against the guaranty fund for money advanced in its behalf pursuant to promise of repayment, which money was not in fact repaid. Plaintiff, in contradistinction to bank depositor claimants, is a true creditor of the guaranty fund. He advanced money to the fund which ought to have been repaid and was not. There has always been sufficient money in the fund to repay plaintiff. To compel plaintiff, under those circumstances, to prorate on the same basis with bank depositor claimants against the fund would amount equitably to distributing to bank depositor clamants, not only the guaranty fund, but also the money of plaintiff.

In view of the distinct and essentially different nature and origin of their respective claims against the fund, we think plaintiff in this case cannot be deemed to be in the same class with those claimants against the bank guaranty fund whose claims originated solely by reason of the fact that they happened to be depositors in failing state banks, and, as between plaintiff and such claimants, we think plaintiff, in equity and good conscience, stands in a preferred position. Bank depositor claimants have no right to demand or expect that money which plaintiff advanced to the guaranty fund, and which should and could have been repaid, and was not, should be distributed to them.

The judgment of this court will therefore be that the peremptory writ issue as prayed.

All the Judges concur.