[No. 15292.    Department Two.    April 26, 1919.]

THE STATE OF WASHINGTON, *on the Relation of* C. O. E.
*Anderson, Plaintiff,* v. I. M. HOWELL, *Secretary
of State, Respondent.*[1]

STATUTES (14)—SUBJECTS AND TITLES—EXPRESSION IN TITLE. An
emergency clause is not an independent subject that must be stated
in the title of the act, under Const., art. 2, § 19.

SAME (35-1) — AMENDMENT — TITLE OF AMENDMENT. An amend-
ment of an act adding an emergency clause and merely changing
the time when it takes effect is not an amendment changing the
scope and object of the bill, within the inhibition of Const.,
art. 2, § 38.

SAME (2-3)—INITIATIVE AND REFERENDUM—EMERGENT ACTS. The
declaration of an emergency contained in a bill is not binding upon
the courts but is a judicial question, unless the act is doubtful and
the doubt resolved in favor of the declaration treated as a legislative
question.

SAME (2-3). Chapter 46, Laws of 1919, p. 90, providing a "Motor
Vehicle Fund" for the support of the highways of the state, is an
act for the support of a public institution, within the 7th amend-
ment to the constitution, justifying the legislature in declaring an
emergency which excepts the act from a referendum to the people;
especially as the funds for the current year were needed prior to the
time of the taking effect of general laws.

Application filed in the supreme court March 21,
1919, for a writ of mandamus to compel the secretary
of state to file an application for a referendum. Denied.

*W. R. Crawford* and *Morris B. Sachs,* for relator.

*L. L. Thompson, Attorney General,* and *R. M. Bur-
gunder, Assistant,* for respondent.

MOUNT, J.—This is an application for a writ of man-
damus to compel the secretary of state to accept and
file certain documents offered by the relator for the
purpose of subjecting § 1, ch. 46, of the Laws of 1919,
p. 90, to a referendum. The secretary of state refused

[1]Reported in 181 Pac. 37.

to file the documents offered by the relator, for the rea-
son that the chapter mentioned contained an emergency
clause and was, therefore, not subject to a referendum.

It appears that, in 1915, the legislature of this state
enacted chapter 142 of the laws of that year. (Laws
1915, p. 385; Rem. Code, § 5562-1 *et seq.*). This act is
commonly known as the "Motor Vehicle Code." It
was enacted for the purpose of regulating the opera-
tion of automobiles and other vehicles on the streets
and highways of the state, and for raising revenue for
the maintenance and repair of permanent highways.
This law required all operators of motorcycles, auto-
mobiles and trucks to pay a certain annual license fee
based upon the horse power of the engine, except in
case of trucks, which was based upon the per-ton capac-
ity. The money collected from these fees was required
to be deposited in the state treasury to the credit of
the general fund; and after paying the expense of is-
suing the licenses, the surplus was credited to the
permanent highway fund for the maintenance and re-
pair of permanent highways. In 1917, by chapter 155
of the laws of that year (Laws 1917, p. 627), the an-
nual license fees were increased and the law of 1915
was amended so as to provide that the moneys re-
ceived from motor vehicle license fees should be dis-
tributed to the counties for the maintenance of pri-
mary highways, on the basis of one hundred dollars
per mile for each mile of such primary highways con-
structed therein. The balance of the money was paid
to the counties for the maintenance of permanent high-
ways. The legislature of 1919, by chapter 46, amended
sections 15, 17 and 18 of the act of 1915 by a law which
provides as follows:

Section 1 changes the basis for the collection of
fees from horse power to weight and materially in-
creases the fees. This section also adds to the exist-

ing law by providing that trucks shall carry only a certain size load.

Section 2 of the act exempts certain motor trucks and automobiles from a license fee.

Section 3 creates a state fund to be known as the "Motor Vehicle Fund," and requires that all fees collected by the secretary of state be credited to this fund, from which shall be paid annually: First, one-half of the amount appropriated for the biennium for the motor vehicle department in the secretary of state's office. Second, one million dollars, to be distributed to the counties and cities for the maintenance of primary highways on the basis of two hundred dollars per mile for each mile of primary highway constructed in the counties and of such streets as are a part of such highways, and the balance of the money to be credited to the permanent highway maintenance fund of the respective counties. Third, the balance put into such fund is applied to general road construction or paving, as provided for by appropriation.

Section 5 of the act provides:

"This act is necessary for the immediate preservation of the public safety and the support of the existing institutions of the state and shall take effect immediately."

After this chapter was passed by the legislature, the relator offered to file five printed copies of the act, and a statement giving the name and post office address of the relator, and his affidavit that he is a legal voter in the state, and requested the secretary of state to submit the act to a referendum under the constitution. The secretary of state refused to file these documents, and this application was made for a writ of mandamus.

The relator argues that the emergency clause is not effective for the reason that the title of the act does

not contain a statement to the effect that the act is emergent. The title of the act is as follows:

"An act relating to the use of public highways, providing for the licensing of motor vehicles and the collection and disbursement of fees therefor, and amending sections 15, 17 and 18 of chapter 142 of the laws of 1915."

Relator argues that it was necessary under the constitution that the title of the act should have contained a statement to the effect that it was emergent. No provision of the constitution is pointed out to us which requires that an emergency must be stated in the title of an act. Section 31 of article 2, was stricken from the constitution by the act of 1911 (Laws of 1911, page 136), ratified at the election in 1912. Section 19 of article 2, provides that: "No bill shall embrace more than one subject, and that shall be expressed in the title." An emergency is not an independent subject. It is simply a provision relating to the time when the act becomes effective.

Relator also argues that, when the bill was originally introduced in the legislature, it contained no emergency clause; that afterwards the emergency clause was introduced as an amendment to the act. The relator contends that this changes the scope of the bill and is in violation of § 38 of article 2 of the constitution, which provides: "No amendment to any bill shall be allowed which shall change the scope and object of the bill."

It is plain, we think, that an amendment which states the time when a bill shall take effect does not change the scope or object of the bill. It simply changes the time when the act shall take effect. It has no reference to the scope or object of the bill. We are satisfied, therefore, that, even though the emergency clause was

attached to the bill by amendment, it did not affect either the object or scope of the bill.

Relator strenuously argues that this bill is not emergent as a matter of law, notwithstanding the legislative declaration that it is emergent. A number of cases from this court are cited to the effect that the question of emergency is a judicial question. We said, in *State ex rel. Case v. Howell*, 85 Wash. 281, 147 Pac. 1162, quoting from *State ex rel. Brislawn v. Meath*, 84 Wash. 302, 147 Pac. 11:

" 'The said legislative declaration has no greater effect, and is no more binding upon the court, than if the legislature had declared that a certain measure is or is not constitutional. In such contingency that question would still remain for the courts to determine. The question before us is simply one of construction or interpretation of an act of the legislature and of a provision of the constitution, and that is a judicial question.' "

We also said in the *Brislawn* case:

"The true rule is: The referendum cannot be withheld by the legislature in any case except it be where the act touches the immediate preservation of the public peace, health, or safety, or the act is for the financial support of the government and the public institutions of the state, that is, appropriation bills. If the act be doubtful, the question of emergency will be treated as a legislative question, and the doubt resolved in favor of the declaration of emergency made by the legislative body."

See, also, *State ex rel. Blakeslee v. Clausen*, 85 Wash. 260, 148 Pac. 28, Ann. Cas. 1916B 810.

The constitution provides, in the 7th amendment:

"The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, or any part thereof passed by the legislature, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, sup-

port of the state government and its existing public institutions, . . .''

This court has held, in the cases of *State ex rel. Blakeslee v. Clausen* and *State ex rel. Case v. Howell, supra,* that highways are existing institutions. In the *Blakeslee* case, we said:

''Upon any theory, a public highway is a public institution. A road is not only a physical institution built by the state in the exercise of its sovereign duty to promote the convenience and necessities of the citizen as well as the common welfare, but the department to which the legislature has delegated that function is an institution as much so as is its creator, the legislature.''

Chapter 46 of the Laws of 1919, p. 90, is an act for the support of the highways of the state. It regulates the use of such highways. It authorizes certain motor vehicles to be operated upon the highways upon the payment of certain license fees. These license fees are to go into a fund known as the ''Motor Vehicle Fund.'' The fund is to be distributed in a certain way to be paid out by appropriations. The same legislature, by an act known as ch. 92 (p. 223), appropriated money to be raised from these license fees. Chapter 46 is to be construed *in pari materia* with other chapters appropriating moneys from these funds. In fact, chapter 46, amending the act of 1915, is in effect a revenue measure. It provides the revenue by which the public highways in the state are to be built and maintained. It is, therefore, plainly an act relating to the support of the state institutions. We can readily understand why there was an emergency for this chapter. Under the provisions of the act of 1915, as amended by the laws of 1917, collections from motor vehicle license fees began on March the 1st and were to be paid into the secretary of state's office prior to June the 1st. If

chapter 46, now under consideration, did not take effect until ninety days after the adjournment of the legislature, it would not take effect until after June the 1st, so that the increased license fees from motor vehicles operating upon the highways of the state could not be collected under the act until the year 1920. Large appropriations for maintenance and construction of highways were made out of the fees to be collected from motor vehicles. It was necessary, therefore, in order that these appropriations might become available to support the public highways, that this act should take effect immediately. But even if this were a doubtful question, then, under the rule in *State ex rel. Blakeslee v. Clausen, supra,* the legislative declaration would control. We think the question is not doubtful and that the legislature was justified in making the act emergent. Being an emergent act, it is not subject to a referendum under the constitution.

The application is therefore denied.

MITCHELL, TOLMAN, and HOLCOMB, JJ., concur.