STATE ex rel DRISCOLL, State Treasurer, et al, Respondents,
v. SMITH et al, Appellants.

(206 N. W. 233.)

(File No. 5995.    Opinion filed December 9, 1925.)

1.  **Banks and Banking—Bank Guaranty Law—Depositors' Guaranty
    Certificates of Indebtedness Held Not Entitled to Priority
    Over Subsequently Issued Certificates Maturing on Same Date.**
        Under Rev. Code 1919, Sec. 9020, as amended by Laws 1921,
    c. 134, certificates of indebtedness issued by depositors' guar-
    anty fund commission have no priority over certificates matur-
    ing on same date, subsequently issued to depositors and hold-
    ers of exchange in banks subsequently failing.

2.  **Statutes—Guaranty Fund Commission—Practical Construction by
    Depositors' Guaranty Fund Commission in Single Transaction
    Held Not As Persuasive As Construction Followed During
    Course of Years.**
        Practical construction of Rev. Code 1919, Sec. 9020, as
    amended by Laws 1921, c. 134, by depositors' guaranty fund
    commission on advice of Attorney General in single transac-
    tion, is not entitled to same weight as construction followed
    during course of years.

3.  **Banks and Banking—Deposits—Money of Depositors' Guaranty
    Fund Deposited in Banks Remains Part of Such Fund.**
        Money withdrawn from depositors' guaranty fund and de-
    posited in banks, under Act 1921, c. 136, remains part of
    such fund, notwithstanding section 2.

4.  **Banks and Banking—Offset—Guaranty Fund Certificates Cannot
    Be Offset Against Assessment for Fund Until Certificates Due
    Preceding Year Are Paid in Full.**
        Banks holding depositors' guaranty fund certificates cannot
    offset such certificates against assessments for guaranty fund
    until certificates payable March 1st of year preceding maturity
    of their certificates have been paid in full.

5.  **Statutes—Legislature—Statute Relating to Depositors' Guaranty
    Fund Held Not Entitled to Emergency Clause.**
        Laws 1925, c. 100, relating to depositors' guaranty fund
    did not become effective until July 1, 1925, notwithstanding
    emergency clause; act not being for preservation of public

peace or safety, nor for support of state government or its existing public institutions.

**6.   Statutes—Title Need Not Refer to Emergency Clause.**
     Title of act need not refer to emergency clause to make act valid.

Appeal from Circuit Court ,Hughes County; HON. JOHN F. HUGHES, Judge.

Mandamus by the State of South Dakota, on the relation of J. L. Driscoll, State Treasurer ,and others, against Fred R. Smith and others, as members of the Depositors' Guaranty Fund Commission, and others. From a judgment for plaintiffs, and from an order denying a new trial, defendants appeal. Reversed.

*Buell F. Jones,* Attorney General, *C. O. Bailey,* of Sioux Falls, *H. E. Hitchcock,* of Mitchell, and *A. B. Fairbank,* of Sioux Falls, for Appellants.

*F. W. Lambert,* State's Attorney, of Ft. Pierre, and *Stephens, McNamee, O'Keeffe & Stephens* and *Martens & Goldsmith,* all of Pierre, for Respondents.

(1)   To point one of the opinion, Appellant cited:   Blower v. Morret, 2 Vesey, Sec. 420; State of Missouri ex rel Kellogg v. Bishop, State Treas., 41 Mo. 16.

(2)   To point two, Respondent cited:   Superior Lodge v. Van Camp, 40 S. D. 142; Jones v. Mellette county, 38 S. D. 299; Tulare Independent School District v. Crandon School District, 199 N. W. 451; Burns v. Board of County Commissioners, 39 S. D. 426.

GATES, J.   This is a mandamus proceeding brought on April 14, 1925, by the state of South Dakota, Stanley county, Frank R. Strain, and Ralph B. Eldridge, as holders of certificates of indebtedness issued by the depositors' guaranty fund commission to the depositors and exchange holders of the insolvent Stock Growers' Bank of Ft. Pierre, to compel the payment of said certificates out of the funds in the hands of the depositors' guaranty fund commission. The trial court on May 14, 1925, made the alternative writ permanent and directed the payment of the certificates. The court found that the bank suspended on March 17, 1923; that there were then not sufficient funds in hands of the guaranty commission to pay the depositors and ex-

change holders; that certificates aggregating $507,993.01 were issued by the commission payable March 1, 1924, with 5 per cent interest from March 17, 1923; that on or about July 1, 1924, 50 per cent of the face of said certificates was paid; that at the time of the trial the commission had on hand in excess of $500,000, being more than sufficient to pay the remaining principal of said claims in full, together with interest. The court also found that 141 other banks whose deposits were protected by the guaranty fund had failed subsequently to the failure of the Ft. Pierre bank and that guaranty fund certificates had been issued to the depositors and exchange holders thereof. From the judgment and an order denying new trial the defendants appeal.

The contention of the plaintiffs is that, inasmuch as the Ft. Pierre bank was the first bank to fail after there ceased to be money enough in the guaranty fund to pay claims, the certificates issued to the depositors and exchange holders of said bank are entitled to precedence in the order of payment.

It is the contention of defendants that chapter 100, Laws 1925, governs, and that all depositors and exchange holders of all suspended state banks should share pro rata in the funds in the hands of the commission.

[1] The basis of plaintiff's claim is section 9020, Rev. Code 1919, as amended by chapter 134, Laws 1921, which reads as follows:

"When any bank doing business under the provisions of this chapter suspends or becomes insolvent, the superintendent of banks shall forthwith proceed to determine the amount necessary to pay the unsecured depositors and holders of exchange in good faith, in full, and cause the same to be certified to the depositors' guaranty fund commission, which shall thereupon draw against the depositors' guaranty fund on deposit in the several banks in the amount thus certified, and the treasurer of such commission shall immediately transmit the amount to the superintendent of banks, to be applied in payment of the deposits and outstanding exchange due such depositors and holders of exchange in good faith; provided, that if there should not be sufficient funds in the depositors' guaranty fund to pay such claims, such commission shall issue a certificate of indebtedness, negotiable in form, against the depositors' guaranty fund, and in favor of such bank, draw-

ing interest at the rate of not to exceed seven per cent per annum, which certificate of indebtedness shall become due and payable on the first day of March next succeeding the date of issue thereof and shall be paid out of the first money accruing to the depositors' guaranty fund. Such certificates of indebtedness may be sold or assigned at not less than their face value by the superintendent of banks and the proceeds used by him for the purpose of paying the deposits of such bank which are legitimate claims against the depositors' guaranty fund. Such certificates many, however, in the discretion of the guaranty fund commission, be issued payable to the depositors of such bank for the amounts of their approved claims, drawing interest at a rate of five per cent per annum. Such drafts against the depositor's guaranty fund shall be prorated, as nearly as may be, among the several solvent banks wherein such fund is kept and maintained, in accordance with the amounts thereof held by such banks respectively."

Down to and including said amendment of 1921, there has been no substantial change from the first enactment of the guaranty fund law in regard to any question of priority of payment as between certificate holders. Section 16, art. 3, c. 102, Laws 1915; section 1, c. 143, Laws 1917; Rev. Code 1919, § 9020. The third and second sentences from the end of said act of 1921 appear for the first time in that act; those being the sentences giving the superintendent of banks to power to negotiate the certificates and to the commission the right to issue certificates to the depositors and exchange holders instead of one certificate to the bank.

On August 8, 1923, pursuant to request for advice, the Attorney General advised the superintendent of banks as follows (A. G. Op. 1924, p. 49):

"When, after a bank suspends or becomes insolvent, the superintendent of banks ascertains the amount necessary to pay the unsecured depositors and holders of exchange, and the commission, in accordance with the superintendent's certified statement, issues the certificate or certificates of indebtedness above referred to, such certificate or certificates become a fixed charge against the depositors' guaranty fund to be 'paid out of the first money accruing' to that fund. It is apparent, therefore, that such certificate or certificates should be paid before the payment of any

certificate or certificates of a later issue. Pro rata payments on all outstanding certificates regardless of the dates of issues would therefore be improper."

In our opinion such advice was clearly wrong. The Legislature evidently intended to provide for an annual cut-off as of March 1, of each year, so that, for instance, all certificates issued on or after March 1, 1923, and before March 1, 1924, should be payable March 1, 1924. In so far as certificates so issued shall be compared with certificates issued after March 1, 1924, and payable March 1, 1925, the legislative intent is clearly manifest that the certificates payable March 1, 1924, shall be paid before those payable March 1, 1925, are paid, but there is no legislative intent indicated that there shall be any priority of payment between any of the certificates payable March 1, 1924. If bank A failed on March 1, 1923, bank B, on March 2, 1923, bank C, on March 3, 1923, and so on, there being insufficient funds, a certificate would be issued to A bank (or certificates to the depositors and exchange holders of A bank). The same procedure would be followed in respect to B and C. banks. All certificates for all three banks would be payable March 1, 1924, "out of the first money accruing to the depositors' guaranty fund." But it is urged that the certificate issued to bank A (or the certificates to the depositors of bank A) is an equitable assignment pro tanto of the fund, and that, having received it, the bank acquired a vested right to receive the amount specified in the certificate. In our opinion the language of the statute which provides that the certificate "shall be paid out of the first money accruing" to the fund imparts notice to the certificate holder that the like right to recover payment out of the first money accruing to the fund will also inure to the benefit of any certificate holder whose certificate is payable on the same date. In other words, bank A receives the certificate with full knowledge that, if banks B and C thereafter fail and certificates are issued payable at the same time as the certificate issued to bank A, then all of such banks will be entitled to be paid out of the first money accruing to the fund. It is also urged that, even if the equities are equal, priority in time of issue should require priority in payment, but that equitable principle would be subversive of the equality of the equities as applied to this case. If such principle were applied, bank A would be en-

titled to be paid out of the first money accruing to the fund, and banks B and C would not. The fact is that the statute is silent as to the question of priority between certificates payable on the same date. The equitable interest obtained by the certificate holders are not interest in praesenti, but are interests in futuro, and come into existence simultaneously on the date the certificates are payable, and it is immaterial whether one certificate or set of certificates antedates the others, so long as they are all payable on the same date. There is neither priority in time, nor any sort of priority in inception or circumstance, and, the equities being equal in all respects, the available funds must be prorated. All being upon an equality, all should participate equally.

It is urged that the provision authorizing the superintendent of banks to negotiate the certificate given to the suspended bank implies that the certificate first issued must have priority of payment, else, under the customs of business, no one would purchase it from the superintendent. If that provision standing alone had been in the law from the adoption of the guaranty plan, there might be some force in that suggestion; but ,as we have shown above, that provision was new in the 1921 amendment, and at the same time that was enacted the accompanying lieu provision was enacted which provided that, instead of issuing one certificate to the bank, several certificates to the respective depositors and exchange holders might be issued. This would seem to negative any implication of priority that might arise by applying the customs of business to the other provision.

[2] It is urged that ,in the interpretation of the act of 1921, consideration should be given to the practical construction of it by the department and as advised by the Attorney General. Until the failure of the Ft. Pierre bank the guaranty fund had always been sufficient to meet its obligations, and no certificates of indebtedness had ever been issued. The question of departmental construction is therefore not to be considered in the light of a construction followed during the course of years such as would be persuasive as an aid in the interpretation of the act.

Therefore in paying the certificate holders of the Ft. Pierre bank on July 1, 1924, 50 per cent of the face of their certificates, the guaranty fund commission clearly erred, unless there were then sufficient funds to make the like payment on all certificates

which had been issued on or after March 1, 1923, and payable March 1, 1924. If there were not sufficient funds to make such like payments, then such 50 per cent payment must be considered as still being in the guaranty fund.

[3] In the endeavor to arrive at the amount of the guaranty fund on hand at the time of trial, other questions were presented to the trial court. It appeared that purporting to act under the provisions of chapter 136, Laws 1921, the sum of $114,952.31 had been drawn from the guaranty fund and deposited in banks to which said chapter was applicable. Such money, even if withdrawn in full compliance with said act, is still a part of the guaranty fund, and even if under the language of section 2 of said chapter, "The money so deposited, with interest, shall be paid back to the guaranty fund in whole or in part by the bank whenever the superintendent deems it advisable," the time of such restoration rests in the sound discretion of the superintendent of banks.

[4] It appeared at the time of the trial that certain state banks had refused to pay the 1925 assessment for the guaranty fund, claiming the right of offset as against guaranty fund certificates held by them. What we have heretofore said disposes of such claim adversely to such banks. The guaranty fund certificates held by such banks must take their rank with other certificates in accordance with date of issue and date payable. No right of offset exists in favor of certificates payable March 1, 1925, until all certificates payable March 1, 1924, have been paid in full. Of course, if the assessed bank has a certificate payable March 1, 1924, the right of offset may exist, the amount of which is to be determined by the guaranty fund commission, in accordance with the rule of prorating which we have declared; but, for the purpose of determining the amount of the fund, the 1925 assessments must be considered as in the fund.

[5, 6] The trial court correctly held that chapter 100, Laws 1925, was not in effect at the time of the trial, and would not go into effect until July 1, 1925, notwithstanding the emergency clause attached thereto. The act was not one for the preservation of the public peace or safety, nor was it for the support of the state government or its existing public institutions; therefore the Legislature had no authority to attach the emergency clause to the act. Hodges v. Snyder, 43 S. D. 166, 178 N. W. 575; Warwick

v. Bliss, 45 S. D. 388, 187 N. W. 715; State ex rel. Kleppe v. Steensland, 46 S. D. 342, 192 N. W. 749; Johnson v. Jones, 48 S. D. 260, 104 N. W. 15. But the trial court erred in assigning the failure of the Legislature to include in the title of the act a reference to the emergency clause as one of the court's reasons for holding that the emergency clause was void. It was not necessary that the title should contain a reference to the emergency clause. The time at which an act is to go into effect is no part of the subject of the act. Wheelon v. S. D. Land Settlement Board, 43 S. D. 551, 181 N. W. 359, 14 A. L. R. 1145.

The act, not having taken effect until July 1, 1925, had and has no bearing on the distribution of the money in the hands of the guaranty fund commission at the time this proceeding was begun, nor did it have a bearing on the 1925 assessment made by the commission.

We are not called upon in this case to decide, and we do not decide, what effect chapter 100, Laws 1925, will have upon the 1926 guaranty fund assessment, and ,of course, nothing held herein can have any bearing upon the legal effect of chapter 99, Laws 1925, in case that act is sustained by a vote of the people under the referendum that has been invoked.

The judgment and order appealed from are reversed.

Note.—Reported in 206 N. W. 233. See, Headnote (1), (3) and (4), American Key-Numbered Digest, Banks and Banking, Key-No. 15, 7 C. J. Sec. 15; (2) Statutes, Key-No. 219, 36 Cyc. 1141; (5) Statutes, Key-No. 251, 36 Cyc. 1193; (6) Statutes, Key-No. 109, 36 Cyc. 1028.