STATE *v.* DAVIS.

Opinion delivered December 17, 1928.

*John L. McClellan* and *Isaac McClellan,* for appellant.

*T. Nathan Nall* and *Rowell & Alexander,* for appellee.

SMITH, J.    Opal Woolems made complaint on October 22, 1927, to the county court of Grant County, that Vernon Davis was the father of her bastard child, and she prayed judgment against him for the statutory allowances.    There was an appeal to the circuit court from the judgment of the county court, and, upon the appeal, a jury found that Davis was the father of the child. Upon this verdict the court rendered judgment requiring Davis to pay the mother of the child the sum of $25 as lying-in expenses and the sum of $10 per month from the date of the birth of the child until it arrived at the age of fourteen years.

At a later day of the same term the court made an order reciting that act No. 111 of the 1927 session of the General Assembly (Acts 1927, page 310), was not in force at the time the child was born, and that the judgment was for that reason reduced to conform to § 777,

C. & M. Digest, which section was amended by the 1927 act, and the plaintiff has appealed from that judgment.

The act of 1927, which increased the allowances to the mother of a bastard child over those allowed by § 777, C. & M. Digest, was approved by the Governor March 4, 1927, and, as there was no emergency clause to the act, it became effective and operative as a law ninety days after March 10, 1927, the date of the adjournment of the General Assembly. *Gaster* v. *Dermott-Collins Road Imp. Dist.*, 156 Ark. 507, 248 S. W. 2.

The child was born April 17, 1927, which was after the passage of the act of 1927, but before it became a law, and appellee insists that his liability for the support of the child cannot be increased beyond the amount provided by law at the time the child was born, as he has a vested right in the law declaring his liability. The circuit court accepted this view, and, on appellee's motion, reduced his liability to conform to the original law.

We think the court was in error, and that judgment should have been rendered in accordance with the law as it existed at the time of the trial, which was the act of 1927.

Although a bastardy proceeding is in the name of the State, it is of a civil nature (*Scott* v. *State*, 173 Ark. 625, 292 S. W. 979), and, as was said in this Scott case: "Section 772 *et seq.*, C. & M. Digest, gives the mother of such a child the right to require the father to contribute to its support, and implies an obligation and a promise on his part to help support it, and this court has held that she can enforce such a promise, based upon moral obligations and a legal liability."

The act of 1927 is not therefore an *ex post facto* law, for the reason that it is not a criminal statute. It was held in the Scott case, *supra*, that "a bastardy proceeding is a civil action, and a petition for a change of venue in such a case would come under the provisions of law applicable to changes of venue in civil cases."

In the case of *Willetts* v. *Jeffries*, 5 Kan. 470, the contention was made by the father of a bastard child, as

it is here, that he had the vested right to have his liability for begetting the child determined by the law as it existed when the child was born. This argument was answered very effectively by Justice Valentine for the Supreme Court of Kansas, who, after saying that the bastardy law of that State was not an *ex post facto* law, for the reason that such laws relate to criminal, and not to civil, proceedings, said also that no one has a vested right to do wrong, and that no case could be found giving one a vested right to ignore the fundamental principles of morality and natural justice. The learned justice proceeded to say that the purpose of the bastardy laws was not to punish the father for his illicit intercourse with the mother of the bastard child, but that the object of the laws was to enforce, by a stringent remedy, that moral obligation resting upon every father to support his own offspring.

In support of the argument that a parent has no vested right to have his obligation to his offspring determined by the law as it existed at the time the child was born, the learned justice said that, if this were sound doctrine, the law that was in force at the time the child is begotten must forever remain the law that shall govern the relations between that child and its parents, and that a parent might sustain a very different relation towards his own children dependent on the state of the law at the time of their birth. It was pointed out that, if this were the law, courts could not administer the same equity and justice to all fathers alike and to all children alike, but that it would be necessary to know the state of the law at the time of the birth of the children to determine the mutual duties and liabilities of parent and child.

In upholding a statute making the father of an illegitimate child "liable to all the penalties and all the orders for the support for the child provided in the case of a parent who is found guilty of unreasonably neglecting to provide for the support and maintenance of a minor child," which was passed after the birth of a child, the Supreme Judicial Court of Massachusetts, in the case of

*Commonwealth* v. *Callaghan,* 111 N. E. 773, 223 Mass. 150, said:

"If it is *ex post facto* legislation to compel the father to provide for the support of a child not born in wedlock, because born before the statute was enacted, it might be argued that it is contrary to the Constitution to punish a husband, under St. 1911, c. 456, for refusing to support his wife and children, because he was married and the children born before the statute took effect, or to insist on a son of sufficient means supporting his parents under St. 1915, c. 163. We are of opinion that St. 1913, c. 563, is not *ex post facto* legislation."

See also *Wamsley* v. *People,* 64 Colo. 521, 173 Pac. 425; *McLain* v. *Meadows,* 44 Cal. App. 402, 186 Pac. 411; *Bradfield* v. *State,* 92 Atl. 988; 7 C. J., chapter "Bastards," § 38, page 957; 12 C. J., chapter "Constitutional Law," § 803, page 1098, note 5.

We conclude therefore that the circuit court was in error in setting aside the original judgment rendered in this cause and modifying it to conform to § 777, C. & M. Digest, and the cause will be remanded, with directions to re-enter the original judgment conforming to the act of 1927.