ARMSTRONG *v.* STURCH.

5-2917                                      361 S. W. 2d 77

Opinion delivered October 22, 1962.

*Fred Pickens, Jr.,* for appellant.

*Kaneaster Hodges,* for appellee.

CARLETON HARRIS, Chief Justice. Seventy-six electors of Glaize Township, Jackson County, Arkansas, on July 23, 1962, filed a petition with Joe G. Armstrong, County Clerk of Jackson County, and one of the appellants herein, asking that the question of ''For the Manufacture or Sale of Intoxicating Liquors'' and ''Against the Manufacture or Sale of Intoxicating Liquors'' be placed upon the ballot for the general election to be held on November

6, 1962. No action was taken by the clerk, and about September 18th, that official advised appellees that the petitions·had not been filed within the time prescribed by law, and he would not canvass its sufficiency or certify it to the County Board of Election Commissioners for inclusion on the November 6th ballot. On September 26, 1962, appellees filed their complaint in the Chancery Court of Jackson County, Arkansas, seeking Writs of Mandamus against the County Clerk and the County Board of Election Commissioners to compel the certification of the petitions as sufficient, and the submission of the question (heretofore stated), at the general election. Appellants, the County Clerk and the Board of Election Commissioners of Jackson County, filed their demurrer to the complaint on the ground that such complaint showed on its face that the petitions had not been filed within the time prescribed by law. The demurrer was overruled by the court. Appellants elected to stand on the demurrer and declined to plead further. Admittedly, the petition, insofar as containing a sufficient number of qualified electors, is valid. The court directed the issuance of writs as prayed, and this appeal followed.

Only one question is presented in this lawsuit, *viz*, "Were the petitions filed within the time prescribed by law?", and our holding is confined solely to that issue.

Appellants' contention that the petitions were not valid is based on the provisions of Amendment No. 7 (Initiative and Referendum) to the Constitution of the State of Arkansas. The pertinent portion of the amendment, relied upon by appellants, is found under the heading "Municipalities and Counties" and reads as follows:

"In municipalities and counties the time for filing an initiative petition shall not be fixed at less than sixty days nor more than ninety days before the election at which it is to be voted upon; * * *"

Initiated Act No. 1 of 1942 [§ 48-801 Ark. Stats. Anno.] provides for the manner of holding "Local Option" elections, and this section was amended by Act 15 of the

General Assembly of 1955. Section 2 of that act [§ 48-825 1961 Supp.] provides:

"Every petition for a local option election shall be prepared in accordance with Initiated Act No. 1 of 1942 [§ 48-801], and it shall be filed, and the subsequent proceedings thereupon shall be had and conducted, in the manner provided for county initiative measures by Initiative and Referendum Amendment No. 7 to the Constitution of Arkansas and enabling acts pertaining thereto."

The sum and substance of appellants' argument is, therefore, as follows:

The petitions of appellees were filed with the clerk on July 23, 1962. This was more than 90 days prior to the general election to be held on November 6, 1962, and, thus, (it is contended) in conflict with the requirements of Amendment No. 7. Accordingly, in appellants' view, the petitions were not timely filed, and the court erred in holding them valid, and directing its writs of mandamus to appellants.

In rendering its decision, the court stated:

"This matter is presented to the Court on the complaint of the plaintiffs to which the defendants have demurred, thereby, admitting the truth of the allegations in the complaint. And, in an attempt to sustain their demurrer, they contend that the time limits under the I & R Amendment govern the time of filing and as the petitions were filed more than ninety days before the election that they were, so far as the Clerk is concerned, never filed and, although they admit that the Clerk has refused to act on the petitions, that he was not required to act because of this early filing.

"It has been argued here that the time of filing for these petitions is governed by the I & R Amendment. I fail to see that. We have here the Section 48-801 which controls the local option elections. As to the preparation and the filing of the petitions and the percentage required, it is admitted the petitions represented a proper percentage of the qualified electors in Glaise Town-

ship in Jackson County; so that question need not be passed on.

"Section 48-801 as amended by Act 15 of 1955, which is in the Digest as 48-824 and 25, governs this case before us, but Act 15 of 1955 or Section 48-825 of the Digest says:

Every petition for a local option election shall be prepared in accordance with Initiated Act No. 1 of 1942, — (which is 48-801 of the Digest) — and it shall be filed,—

"It shall be prepared and filed in accordance with 48-801; and right here is where I have to differ with the contentions of the counsel for the defendants. They have put a different construction on this section than I am forced to put on it. Then, after it is filed:

—and the subsequent proceedings thereupon shall be had and conducted in the manner provided for county initiative measures by Initiative and Referendum Amendment No. 7 to the Constitution of Arkansas and enabling acts pertaining thereto.

"Now their argument is based on the theory that the I & R Amendment takes effect before the filing. As I construe this section, when the petitions are filed, then, the I & R Amendment and its provisions begin to take effect; and the procedure from there is in accordance with the I & R Amendment provisions."

We agree with the logic of the trial court, and, as that court subsequently stated, Section 48-801, as amended, does not set a time limit on the filing of petitions.

In January, 1944, in the case of *Yarbrough* v. *Beardon* and *Phillips* v. *Foreman,* 206 Ark. 553, 177 S. W. 2d 38, it was clearly held that Amendment No. 7 to the Constitution has nothing whatever to do with local option elections on liquor questions. In that case we held that the word "measure" used in Amendment No. 7 did not include "a submission to the legal voters of the

county on the question of the sale of liquor''. In 1955, Act 15 was passed. Thereafter, on October 29, 1956, this court handed down its decision in *Brown* v. *Davis,* 226 Ark. 843, 294 S. W. 2d 481, which we deem controlling in the present litigation. In that case we held that *after* a local option petition has been prepared under the provisions of Initiated Act No. 1 of 1942 and filed with the County Clerk, *subsequent* procedure must be governed by Initiative and Referendum Amendment No. 7 to the Constitution. From the opinion:

''The legislative purpose or intent in this Act 15 is clear. Its primary purpose is to change the date of holding local option elections to the regular biennial November election days; in other words, special local option elections are prohibited. In Section 2 it expressly provides that petitions for local option elections must be prepared in accordance with the provisions of Initiated Act No. 1 of 1942, and all subsequent proceedings thereupon shall be had and conducted in the manner provided for county initiative measures by I. & R. Amendment No. 7 to the Constitution of Arkansas. This could only mean, we think, that petitions should be prepared and that procedure followed in accordance with our construction of Act 1 of 1942. Had the legislature intended to repeal any part of Act 1 of 1942 or to change local option elections into initiative acts, it would have been very easy for it to have so declared. The legislature is presumed to take knowledge of the decisions of this court when enacting legislation.

''The decree of the trial court contains these further recitals, which we hold the record supports and to which we agree. 'Under the clear wording and intent of Act 15, *supra,* the provisions of the I. & R. Amendment, and its enabling act, did not come into play (or affect this petition) until said petition was filed with the County Clerk. Up to that time, the petition was and is governed by Initiative Act No. 1 unaffected by the provisions of Sections 2 and 3 of Act 15, *supra.* However, after such petition was filed with the County Clerk, ''subsequent proceedings thereon shall be had and conducted, in the

manner provided for county initiative measures by Initiative and Referendum Amendment No. 7 to the Constitution and enabling acts pertaining thereto.'' This means simply that while the local option petition under Act 1, *supra,* as amended, is not an initiative measure within the meaning of the I. & R. Amendment, still after such local option petition is prepared in accordance with Initiative Act No. 1 of 1942, and filed with the County Clerk, thereafter in order to get the question on the ballot at the regular biennial November general election in an orderly way such petition shall be handled in the same manner, and the same procedure followed, as if it were in fact a county initiative measure. Though different in nature, the same procedure insofar as getting the question on the ballot is concerned, must be followed after said petition is filed with the Clerk. That is what Section 2 provides. * * *,''

It might also be pointed out that we are committed to a liberal construction of this amendment, bearing in mind the purpose of its adoption, and the object it sought to accomplish, *Leigh and Thomas* v. *Hall, Secretary of State,* 232 Ark. 558, 339 S. W. 2d 104. Our holding in *Southern Cities Distributing Company* v. *Carter,* 184 Ark. 4, 41 S. W. 2d 1085, bears some similarity to the issue at hand. There, a referendum petition was filed to refer a municipal ordinance, and was filed less than 30 days after the enactment of the ordinance.[1] This court held that the latter fact did not invalidate the petition, under the provisions of Amendment No. 7 to the Constitution, stating:

''The amendment provides the time for filing a referendum petition at 'not less than thirty (30) days nor more than ninety (90) days after the passage of such measure by a municipal council'. This does not mean, of course, that the petition for a referendum cannot be filed less than 30 days after the passage of the measure

---

[1] Amendment No. 7, following the provision for the filing of initiative petitions in municipalities and counties, (heretofore quoted in the body of this opinion) provides that the time for filing a referendum petition shall be fixed "at not less than 30 days nor more than 90 days after the passage of such measure by a municipal council; * * *"

sought to be referred, but only that the city must allow at least 30 days after the passage of the measure for the filing of a referendum petition thereon, and cannot allow more than 90 days. * * * It is true the referendum petitions were filed * * * less than 30 days after the adoption of such measure but they remained on file and were on file after 30 days after the passage of the gas rate resolution, and were passed upon and certified by the city clerk on the 31st day after the passage of the resolution, as containing sufficient signatures of qualified electors to authorize the referendum petitioned for. The referendum petitions, although they could not have been required to be filed in less than 30 days after the passage of the measure sought to be referred, were in no wise invalidated by having been sooner filed.''

We think the same reasoning applies to the filing of an initiative petition under Amendment No. 7, and the language ''In municipalities and counties the time for filing an initiative petition shall not be fixed at less than sixty days nor more than ninety days before the election at which it is to be voted upon'' simply means that the legislature may not *require* that the petitions be filed earlier. It will be noted that the amendment itself *does not* definitely fix the time, but appears rather as a directive to the legislative body, circumscribing and limiting its authority in the matter.

Of course, viewing the matter from a practical standpoint, appellants, or the general public, have not in any manner been misinformed or misled because the petitions were filed on July 23rd rather than August 8th. As stated in *Southern Cities Distributing Company* v. *Carter, supra*, the petitions ''remained on file with the proper officer''. In fact, though not controlling, if anyone was misled, it was the appellees. The petitions were accepted by the clerk, who placed his filing mark thereon. Petitioners were not advised that, in the clerk's view, the petitions were being filed too early, and it was not until September 18th (when it was too late to file such petitions), that appellees were advised by the clerk that he would not certify the petitions as sufficient. Be that

as it may, we hold that the petitions were filed within the proper time, and the writ was properly issued to the clerk directing that he certify the sufficiency of the petitions to the Board of Election Commissioners, and give the required statutory notice by newspaper advertisement; further, the writ was proper in directing the Board of Election Commissioners for Jackson County to submit the proposal to the electorate at the general election to be held on Tuesday, November 6, 1962.

Affirmed.