SENATOR VIRGIL T. FLETCHER *v.* KELLY BRYANT,
SECRETARY OF STATE
LYTLE CLAREMONT BABER ET AL, INTERVENORS

5-4367                                    422 S. W. 2d 698

Opinion delivered January 15, 1968

*Warren & Bullion,* for petitioner.

*Joe Purcell,* Attorney General; *William R. Hass* and *Henry Ginger,* Asst. Atty. Gens., for respondent.

*Owens, McHaney & McHaney,* for intervenors.

JOHN A. FOGLEMAN, Justice. This is an original proceeding under Amendment No. 7 of the Constitution of Arkansas in which the petitioner, Virgil T. Fletcher, questions the sufficiency of a petition to refer Act 306 of 1967, entitled "The Arkansas Dairy Industry Stabilization Act." Petitioner asserts four separate points upon which he relies. We will discuss these in the order in which he raises them. Since three of the four points relate to the sufficiency of the ballot title contained on the petition and approved by the Attorney General, we deem it advisable that the title be set out here. It is as follows:

## BALLOT TITLE

An Act creating the Arkansas Dairy Commission consisting of five members appointed by the Gov-

ernor, prescribing their qualifications, compensation, and terms of office; authorizing the employment of an Executive Director, attorney, and other employees; authorizing the Commission generally to supervise, investigate, and regulate the entire dairy industry engaged in processing, manufacturing, storing, distributing, and selling milk products (including fluid milk) and frozen dairy products, except health regulations, and to require certain processors to pay to the Commission equalizing charges as therein determined; requiring each dairy-farmer processor, processor, wholesale and retail distributor, retailer, and institution to obtain a license from the Commission for each place of business and pay a license fee; requiring licensees to maintain records and make reports; authorizing and, in certain classes of sales (including sales to consumers), requiring the Commission to establish minimum prices for sales of milk products (including fluid milk) and frozen dairy products in distribution marketing areas, after prescribed investigations, hearings, considerations, and requirements; requiring processors and distributors to file the uniform wholesale price at which certain products, the minimum price for which is not established by the Commission, will be sold by each such licensee; prohibiting the sale of milk products (including fluid milk), frozen dairy products, and other frozen products below established minimum prices or at variance from filed prices; providing for rules of practice, public hearings and procedures, public notice, and judicial review relating to quasi-legislative and adjudicatory functions of the Commission, including issuance, denial, or suspension of licenses; authorizing action to enjoin violations; providing for assessments against processors and certain other licensees based on sales and in an amount not to exceed five cents per hundredweight on all milk or milk equivalent; providing that all license fees, assessments penalties and other monies received by

the Commission be paid into a revolving fund to be used for the administration and enforcement of the Act, no expense to be a charge against State funds; the same being Act 306 of 1967.

In determining the sufficiency of this ballot title, we will keep in mind that we give a liberal construction and interpretation of the requirements of Amendment 7 in order to secure its purposes to reserve to the people the right to adopt, reject, approve or disapprove legislation. *Coleman* v. *Sherrill,* 189 Ark. 843, 75 S. W. 2d 248; *Armstrong* v. *Sturch,* 235 Ark. 571, 361 S. W. 2d 77. Actions of electors in seeking to exercise this right must not be thwarted by strict or technical construction. *Reeves* v. *Smith,* 190 Ark. 213, 78 S. W. 2d 72; *Cochran* v. *Black,* 240 Ark. 393, 400 S. W. 2d 280. For this reason, substantial compliance with the requirements of the amendment is sufficient. *Blocker* v. *Sewell,* 189 Ark. 924, 75 S. W. 2d 658.

We must also remember that a ballot title is sufficient if it identifies the proposed act and fairly alleges the general purpose thereof, and it need not be so elaborate as to set forth details of the act. *Coleman* v. *Sherrill,* 189 Ark. 843, 75 S. W. 2d 248; *Walton* v. *McDonald,* 192 Ark. 1155, 97 S. W. 2d 81; *House* v. *Brazil,* 196 Ark. 602, 119 S. W. 2d 397. The rule of liberal construction applies to determination of sufficiency of the ballot title. *Sturdy* v. *Hall,* 204 Ark. 785, 164 S. W. 2d 884.

Some significance must be given to the fact that the Attorney General has approved it, pursuant to Ark. Stat. Ann. § 2-208 (Repl. 1956). In considering the weight to be given to the approval of the Attorney General on the ballot title, it is to be noted that neither Amendment No. 7 nor enabling legislation thereunder [Act No. 2 of the Extraordinary Session of 1911 and Act No. 195 of 1943] makes any specific mention of the

ballot title as a part of a referendum petition.[1] On the other hand, a ballot title is specifically required to be a part of an initiative petition. Considerable distinction can be made in the emphasis on the ballot title on a newly proposed legislative measure and that on one which has been adopted by the General Assembly. On a referendum petition the voters are asked to reject a measure officially adopted and published as an act of the legislative branch. The petition, to be sufficient, must adequately identify the act in question. On an initiative petition the voters have no way to be informed except by the publication of the proposed measure which usually would take place sometime later than the publication of acts of the General Assembly. The courts of other states have spoken of the presumptions arising from the approval of ballot titles by those charged with that responsibility. We quote from the opinion in *Say* v. *Baker*, 137 Colo. 155, 322 P. 2d 317, as follows:

"The action of the statutory board empowered to fix the ballot title and submission clause is presumptively valid, and those who contend to the contrary must show wherein the assigned title does not meet the statutory requirement. No such showing is made in the instant case.

In a carefully considered opinion written for a unanimous court, the Supreme Court of California had occasion to consider a title fixed by the attorney general pursuant to a statute, and expressed this principle in clear language as follows:

'In approaching the question as to whether the title so prepared is a proper one all legitimate presumptions should be indulged in favor of the propriety

---

[1]We do not overlook the announcement of the court in *Shepard* v. *McDonald*, 188 Ark. 124, 64 S.W. 2d 559, that the ballot title submitted on a referendum petition must be considered as part and parcel thereof. Dictum in *Washburn* v. *Hall*, 225 Ark. 868, 286 S.W. 2d 494, also gives rise to an inference that this is so.

of the attorney-general's actions. Only in a clear case should a title so prepared be held insufficient. Stated another way, if reasonable minds may differ as to the sufficiency of the title, the title should be held to be sufficient. These rules of construction are in accord with the fundamental concept that provisions relating to the initiative should be liberally construed to permit, if possible, the exercise by the electors of this most important privilege.' *Epperson* v. *Jordan*, 12 Cal. 2d 61, 82 P. 2d 445, 448.

From this principle it further follows, as the Oregon court remarked in *Wieder* v. *Hoss*, 143 Or. 122, 21 P. 2d 780, 781, that:

'The mere fact that after an appeal has been taken and we have had the benefit of the additional labor bestowed upon the ballot title by counsel we may be able to write a better ballot title than the one prepared by the Attorney General constitutes no reason for discarding his title. The purpose of the appeal is not to secure for the bill the best possible ballot title, but to eliminate one that is ''insufficient or unfair,'' if it should develop that the one submitted by the Attorney General is of that kind.' "

There is a clear implication that the General Assembly intended that presumptions as to sufficiency of a ballot title approved by the Attorney General favor the sponsors of a referendum petition inasmuch as the act (Ark. Stat. Ann. § 2-208, adopted in 1943) specifically provides for relief to them, but not to opponents, by petition to this court.

With these principles in mind, we now proceed to separate statement and discussion of points urged by petitioner.

## POINT I.

*The petition was fallacious and void in that it falsely advised the prospective signer that Act 306 became a law on March 13, 1967.*

Section 17 of the Act provides that it shall become effective July 1, 1967, and expire June 30, 1969. The referendum petition, in describing the act, contained the following language:

"We, the undersigned, legal voters of the State of Arkansas, respectively order, by this, our petition, that Act 306 of the General Assembly of the State of Arkansas, which became a law on March 13, 1967, * * *."

Petitioner contends that there is no legal justification for the statement that the act became a law on March 13, 1967, so that the inclusion of this language· must necessarily have been for the purpose of confusing and deceiving prospective signers. In support of his argument, petitioner relies on language in decisions of this court wherein the effective date of acts not containing an emergency clause was in question. In the opinions in some of these cases there is language stating that the particular act did not become a law until ninety days after adjournment of the session of the General Assembly during which it was enacted. Perhaps a more accurate statement would have been that the particular act did not go into effect or become operative as a law until ninety days after the adjournment of the legislature, as was said in most of these decisions. See, *e. g., Arkansas Tax Commission, State ex rel. v. Moore,* 103 Ark. 48, 145 S. W. 199; *Gaster v. Dermott-Collins Road Improvement District,* 156 Ark. 507, 248 S. W. 2; *School District No.* 41 v. Pope County Board of Education, 177 Ark. 982, 8 S. W. 2d 501; *State v. Davis,* 178· Ark. 692, 11 S. W. 2d 479; *Dulaney v. Continental Life Ins. Co.,* 185 Ark. 517, 47 S. W. 2d 1082; *Gentry v. Harrison,* 194 Ark. 916, 110 S. W. 2d 497; *Steele v. Gann,* 197 Ark. 480, 123 S. W. 2d 520, 120, A. L. R. 754; *Fulkerson v. Refunding Board,* 201 Ark. 957, 147 S. W. 2d 980; *Schuman v. Walthour,* 204 Ark. 634, 163 S. W. 2d 517; *Barber v. State,* 206 Ark. 187, 174 S. W. 2d 545; *Knowles v. Vick Chemical Co.,* 240 Ark. 125, 398 S. W. 2d 204.

This language is justified in view of the fact that Amendment No. 7 provides that where a separate "emergency" section of a measure receives the required vote "in favor of the measure going into *immediate operation,* such emergency measure shall become effective without delay." Other language in this section provides that the filing of a referendum petition against one or more parts of an act "shall not delay the remainder from becoming *operative.*" It is also provided that: "Any measure referred to the people by referendum petition shall remain in *abeyance* until such vote is taken." [Emphasis ours] Thus, it will be seen that the question is not whether the act is a law, but whether it is operative or effective as such.

The form of a petition for referendum is prescribed by Ark. Stat. Ann. § 2-204 (Repl. 1956) (Section 2 of Act 2 of the Extraordinary Session of 1911). This section sets out a form which is not mandatory but which must be substantially followed. See, also, § 2-207. The portion of the form for describing the measure to be referred reads: "* * * ........ Act No. ........ of the General Assembly of the State of Arkansas, approved on the ........ day of ........................, 19........, entitled 'An Act ............................ * * *' " Thus, it is obvious that the general form was prepared so as to be appropriate under the usual circumstances when the measure has been approved by the Governor. This measure was not approved by the Governor, however, and became law without his signature. The purpose of specifying the act number and date is to aid in identification of the measure of which referral is sought. *Westbrook* v. *McDonald,* 184 Ark. 740, 43 S. W. 2d 356. In order to properly identify the measure, it then became necessary that there be substituted for the date of approval whatever date most nearly corresponded with the date of approval under the usual circumstances when the measure has been that on which the measure became a law without the Governor's signature. Under our Constitution it could be said that it became a law, in this sense, on March 13, 1967. Article 6, § 15, provides, in pertinent part:

872 .

"If any bill shall not be returned by the Governor within five days, Sunday excepted, after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the General Assembly, by their adjournment, prevent its return, in which case it shall become a law, unless he shall file the same, with his objections, in the office of the Secretary of State and give notice thereof by public proclamation within twenty days after such adjournment."

The challenged statement on the petition is not clearly erroneous, but, even if it were, this court has held that errors in giving the act number and date of approval cannot be misleading when an exact copy of the act appeared upon the petition, as is the case here. *Westbrook* v. *McDonald,* 184 Ark. 740, 43 S. W. 2d 356.

### POINT II.

*The ballot title is defective and insufficient in that it omits any reference to that portion of the act which requires the Commission to prohibit discounts, rebates, and allowances.*

The ballot title is quite lengthy, as is the act. Petitioner argues that the title omits the "very heart" of the act and alleges that the fundamental and basic reason underlying the passage of the act was the prevention of rebates, secret discounts and allowances and cloaks and devises to shield and hide rebates. This court has indicated that a ballot title of unusual length might be objectionable. *Leigh* v. *Hall,* 232 Ark. 558, 339 S. W. 2d 104. The title should state the purposes of the act as concisely as possible. *Reynolds* v. *Hall,* 222 Ark. 478, 261 S. W. 2d 405. A complete abstract of the act to be referred would be impracticable. *Coleman* v. *Sherrill,* 189 Ark. 843, 75 S. W. 2d 248; *Leigh* v. *Hall, supra.* Neither an abstract nor a synopsis is required. *Sturdy* v. *Hall,* 204 Ark. 785, 164 S. W. 2d 884. In addition to identification of the measure, the only requirements are

that the title be intelligible, honest and without misleading amplification, omission or fallacy and without partisan coloring. *Newton* v. *Hall,* 196 Ark. 929, 120 S. W. 2d 364; *Bailey* v. *Hall,* 198 Ark. 815, 131 S. W. 2d 635; *Sturdy* v. *Hall, supra; Washburn* v. *Hall,* 225 Ark. 868, 286 S. W. 2d 494.

Petitioner claims that Section 10 of Act 306 is not covered by the title and calls attention to the fact that 13 practices are prohibited as cloaks or devices to shield and hide rebates, discounts and allowances. If this is the "very heart" of the act, it seems strange that the prohibition of rebates, discounts and allowances is nowhere mentioned in either the title of the act or the title of the section. The title of the act is:

## ACT 306

AN ACT to Create an Arkansas Dairy Commission for the Purpose of Stabilizing the Arkansas Dairy Industry; to Provide for Staffing the Commission and to Relate its General Powers and Authority to Make Investigations, Inspections, and to Require Licenses; to Establish Minimum Prices for Sales of Milk Products and Frozen Dairy Products; to Authorize the Commission to Prohibit the Sale of Milk Products and Frozen Dairy Products Below Minimum Prices or at Variance with Filed Prices and to Relate the Quasi-Legislative and Adjudicatory Functions of the Commission; and for Other Purposes.

The title of Section 10 is:

PROHIBITION AGAINST SALES OF MILK PRODUCTS, FROZEN DAIRY PRODUCTS, AND OTHER FROZEN PRODUCTS BELOW MINIMUM PRICES OR AT VARIANCE FROM FILED PRICES

The 13 practices which petitioner says are prohibited are listed under Subsection B of Section 10, the opening paragraphs of which are:

## B. PROHIBITION OR REGULATION OF OTHER ACTIVITIES IN CONTRAVENTION OF PRICING REQUIREMENTS

The use or attempted use of any method, device or transaction intended to accomplish, or having the effect of accomplishing, the sale or attempted sale or the purchase or attempted purchase of milk products and frozen dairy products at less than the minimum prices established by the Commission pursuant to this Act for sales of such milk products and frozen dairy products, or which is designed to circumvent the price requirements of the Commission (including those provided for in Section 9 of this Act), or which has the effect of substantially undermining the effectiveness of such pricing requirements, shall be prohibited or regulated by the Commission, whether such method, device or transaction applies directly to the milk product or frozen dairy product sold or purchased, or is used in connection with the sale or handling of any other product, commodity, article, or service.

The Commission shall, subject to the requirements of the preceding paragraphs, prohibit or regulate each of the following practices, which said practices are listed herein solely for the purpose of illustrating the broad scope of the Commission's authority under this Section. Such listing is not intended to be an exclusive enumeration of those practices, methods, devices, schemes, arrangements and activities which the Commission is authorized to prohibit or regulate: [Here follows a list of 16 separate topics.]

Subparagraphs (14) (15) and (16) do not prohibit any practice but rather provide for various situations in the absence of established minimum prices. Among these are provisions for granting of certain limited discounts or allowances. Other sections of the act permit or require certain discounts. Sections 8 G. and 8 H. (9) (b).

Even in those subparagraphs of Section 10 B., listing prohibited practices, the Commission to be established under the act could authorize discounts and allowances. See Section 10 B. (1).

It seems clear from a reading of the act that any prohibition against rebates, discounts and allowances is intended to prevent evasion of minimum prices established by the Arkansas Dairy Commission. The statement in the ballot title with reference to the general subject of minimum prices seems to be sufficient.

## POINT III.

*The ballot title is defective and insufficient and is drafted in a partisan manner in that it informs the voter of a license fee requirement without stating the insignificant amount thereof.*

Petitioner contends that the title is insufficient in that it advises that each dairy farmer, processor, wholesale distributor, retailer or institution must apply to the Commission for a license, but fails to state that the fee is only $1.00. Again we note that the legislative title likewise makes no reference to the amount of the license fee. It is not required that the ballot title set forth every detail of the act. If it were so, the requirement of publication of the measure might well be omitted. *Coleman* v. *Sherrill,* 189 Ark. 843, 75 S. W. 2d 248. Actually, the license fee is limited to $1.00 only for licensees who perform only one licensed function or have only one place of business. A license is required for each function and each place of business. Furthermore, the license fee would be paid annually. The act would also permit the payment of not to exceed $500.00 per day by the licensee for each day his license would otherwise be suspended by action of the Commission. The $1.00 fee would only open the door for the processor who was licensed and the licensee who sold products not processed within the State because they would then become subject to an assessment by the Commission for

whatever amount was necessary to obtain funds and reserves for administration and enforcement, not to exceed five cents per hundredweight on all milk and milk equivalent. The already lengthy ballot title would be considerably extended if these explanations were made.

In *Coleman* v. *Sherrill*, 189 Ark. 843, 75 S. W. 2d 248, it was held that a ballot title describing a proposed initiated act as one to fix the salaries and expenses of county officers, to fix the manner in which such compensation and salaries should be paid, to reduce the cost of county government, and for other purposes, was sufficient. Among the matters dealt with in that proposal which could not be ascertained from the title were:

1. Provision for creation of the new office of custodian of county buildings at a salary of $50.00 per month.

2. Separation of the offices of sheriff and collector so that they would be held by two persons rather than one.

3. The sheriff would be on a fee and not a salary basis, and the county, in addition, would be required to furnish him with bedding, clothing, medicine and medical treatment for prisoners.

4. The collector would be allowed penalties and fees on delinquent taxes, in addition to his salary.

These matters were treated as details not necessary to be stated.

We find the ballot title sufficient without specification of the amount of license fees provided therein.

## POINT IV.

*The ballot title is defective and insufficient in that it omits to inform the voter that the act expired by its own terms in two years from the effective date.*

Here again, it is significant that the fact ·that the act would expire by its own terms on June 30, 1969, unless re-enacted by the General Assembly, is not remotely referred to in either the title of the act or the title of the section so providing. The section title is only "EFFECTIVE DATE." While it is not necessary that the title of a legislative act be as full as that of an initiated act or the ballot title for a referendum, it seems that the careful draftsmen of the bill which became Act No. 306 emphasized the items which were important. This omission seems particularly relevant in view of the fact that the act is prefaced by a complete "Table of Contents" with page references to all sections and subsections listed by their respective titles. Similar omissions from titles of legislative acts have been considered in states whose constitutions require that the subject of a legislative enactment be stated in its title. These decisions are persuasive because the purpose of the adoption of the constitutional provisions was to prevent enactment of laws under false and misleading titles which would conceal from legislators or the people the true nature of a proposed law or of particular provisions therein. 50 Am. Jur. 145, Statutes, § 166; 82 C. J. S. 350, Statutes, § 212. The omission of any reference to an emergency clause making an act effective immediately has been held not to make the title insufficient. *Hill v. Taylor,* 264 Ky. 708, 95 S. W. 2d 566. The language of the Kentucky court seems appropriate here in view of the fact that the emphasis of our decisions is on the treatment of the general subject matter in a ballot title. That court said:

"(a)   Section 51 of the Constitution restricts legislative enactments to one subject which 'shall be expressed in the title.' Appellants rely upon the construction, often declared, that the title of an act must fairly and reasonably indicate its substance so as to impart notice of what it proposes to deal with. The time an enactment becomes operative as a law is not a part of the subject-matter. It is not neces-

sary, therefore, under the Constitution that the title of an act should contain a statement to the effect that it is an emergency measure, or that the enactment is emergent. While the specific question is res integra with us, the validity could well be sustained upon numerous cases to the effect that details of an act need not be recited in the title. *Talbott* v. *Laffoon*, 257 Ky. 773, 79 S. W. (2) 244. Where the question has been specifically passed upon, the uniform holding, so far as we are aware, has been that there need be no reference in the title of an act. 59 C. J. 808; *Dinneen* v. *Rider*, 152 Med. 343, 136 A. 754; *State* v. *Smith*, 49 S. D. 106, 206 N. W. 233; *Wheelon* v. *South Dakota Land Settlement Board*, 43 S. D. 551, 181 N. W. 359, 14 A. L. R. 1145; *State* v. *Howell*, 106 Wash. 542, 181 P. 37; *People* v. *Sterling Refining Co.*, 86 Cal. App. 558, 261 P. 1080.''

In *Dinneen* v. *Rider*, cited in the *Hill* case, the Maryland court said that the time an act became effective was not its subject matter. In the *Wheelon* and *Smith* cases, the South Dakota court said that the time at which an act is to go into effect is no part of its subject. In the *Howell* case it was held by the Washington court that a statement of the time when an act takes effect does not change, or have any reference to, either the scope or object of an act.

The time when an act *might* go out of effect seems no more essential to a statement of the general subject of the act or its scope than the time it goes into effect. The actual provision which petitioner contends should be referred to in the title is that the act shall expire June 30, 1969, *unless re-enacted by the next regular session of the General Assembly*. Thus, the act may be temporary or permanent, depending upon the action of the next regular session of the General Assembly. Of course, any act of the legislative branch might be rendered ineffective by amendment or repeal at any sub-

sequent session, general or special. The only difference is that positive action would then be required, while this act could become ineffective by mere inaction. It is interesting to recall that the original, temporary Arkansas Retail Sales Act was made "permanent," insofar as a legislative act can be permanent, by repealing the section which provided: "This act will expire by limitation July 1, 1939." Act 306 of 1967 could be made "permanent" by this same expedient in a legislative session in 1968 or the first half of 1969 without re-enactment of the entire act. While this possibility is not determinative here, it does demonstrate that "effective dates" are not essential to sufficient ballot titles.

## CONCLUSION

We find that Act 306 is adequately identified and its general purposes are fairly stated. A liberal construction requires that we not thwart the right of the voters to approve or disapprove a measure because of deficiencies of the nature of those asserted by petitioner where the ballot title has been approved by the Attorney General.

The petition is denied.

GEORGE ROSE SMITH and BROWN, JJ., dissent.

GEORGE ROSE SMITH, Justice, dissenting. The majority, in following out-of-state decisions with respect to the weight to be given to the Attorney General's approval of the ballot title, have attached more importance to that officer's approval than we have given to it in the past or, in my judgment, we should now give to it. The requirement that state-wide petitions be submitted to the Attorney General for approval is merely a statutory device intended to be of assistance to the sponsors of the petition. The Constitution contains no such provision. Instead, Amendment 7 declares that the sufficiency of state-wide petitions shall be decided in the first instance by the Secretary of State, subject to review by this court. I do not think we ought to diminish our own constitutional responsibility by giving some sort of

prima facie verity to the Attorney General's approval of the ballot title. Our decision should rest on the merits alone, without regard to the Attorney General's conclusion.

In my opinion the ballot title now in controversy is fatally defective in failing to inform the voter that the act is a temporary measure that will expire in two years unless re-enacted by the legislature. Beyond question that is the strongest single point in favor of the act. We all know from experience that both the legislature and the electorate are more inclined to favor temporary measures, as tentative experiments in governmental regulation, than they are to favor similar statutes of a permanent nature. It cannot be doubted that many voters might be willing to try this venture in the touchy area of price control merely as a laboratory test, while those same voters would be wholly opposed to the measure as a permanent innovation. I cannot agree with the majority's view that the opponents of the act have discharged their obligation to draft an impartial ballot title when it is plainly apparent that they have suppressed any reference to the most important single fact in favor of the statute.

It seems hardly necessary to comment upon the court's reliance upon cases having to do with the effective date of initiated or referred measures. Such cases have no real bearing upon the present question. Whether an act goes into effect upon its approval by the governor or ninety days after the legislative adjournment is not apt to affect any voter's approval or disapproval of the measure. No comparable statement can be made about the inherently vital distinction between temporary and permanent legislation.

BROWN, J., joins in this dissent.