[File No. Cr. 138.]

STATE OF NORTH DAKOTA, Respondent, v. OSCAR HOUGE, Appellant.

(271 N. W. 677.)

252

Opinion filed February 19, 1937.

*Hugo P. Reminglon,* for appellant.

*P. O. Sathre,* Attorney General and *John B. Adams,* State's Attorney, for respondent.

*Clair F. Brickner,* amicus curiæ.

CHRISTIANSON, Ch. J. The defendant was convicted in the county court of Ransom county of engaging in the liquor traffic and he appeals from the judgment of conviction and from an order denying his motion in arrest of judgment. The sole question presented for determination is whether at the time of the conviction and sentence there was any statute in this state authorizing punishment to be imposed upon the defendant. The information charges that the defendant committed the crime of engaging in the liquor traffic in Ransom county on the 6th day of March, 1935. It is conceded that the information sets forth facts which show that the defendant at that time committed a public offense. But it is contended by the appellant that the statute which defendant then violated was repealed and abrogated by the liquor control act initiated pursuant to the initiative provision of the constitution and adopted at the general election in 1936, and that as soon as the latter act became effective it not only repealed the former statutes (making it an offense to engage in the liquor traf-

fic), but abrogated all penalties and punishments for any and all violations of said statutes while they were in force.

In this state the manufacture and sale of intoxicating liquors for beverage purposes were forbidden by the constitution (N. D. Const. § 217) and appropriate legislation was enacted to put the constitutional mandate into effect. The constitutional provision was repealed by constitutional amendment adopted at the general election in 1932. Art. 47, Amendments N. D. Const.; Laws 1933, p. 492. But the repeal did not abrogate or repeal the then existing statutes prohibiting the importation, manufacture, sale, or possession of intoxicating liquor for beverage purposes. Re Aipperspach, 63 N. D. 358, 248 N. W. 488; State v. Norton, 64 N. D. 675, 255 N. W. 787. See also State v. Ligaarden, 59 N. D. 475, 230 N. W. 729, 70 A.L.R. 126; Fylken v. Minot, 66 N. D. 251, 264 N. W. 728, 103 A.L.R. 320.

At the general election in 1936 an initiative measure known as the liquor control act was submitted to the electors pursuant to the initiative provisions of the constitution. The measure was approved by the electors and according to the provisions of the constitution it became effective on the thirtieth day after November 3, 1936. The act provided for the wholesale and retail sale of alcohol and alcoholic beverages in the manner and pursuant to the regulations and restrictions prescribed by the act. It authorized places of sale to be established and provided for the licensing of retail and wholesale dealers by the governing bodies of cities and villages, and by the county commissioners in places of sale located outside of the incorporated limits of cities and villages. The act declared that "the object of this enactment is to provide for the sale and regulation of alcohol and alcoholic beverages in the state of North Dakota." It further provided: "All acts and parts of acts in conflict with provisions of this act are hereby repealed."

The defendant was arrested on the 7th day of March, 1935, under a warrant issued upon a duly verified complaint charging him with the crime of engaging in the liquor traffic. On that same day he was committed to answer the charge at the next term of the county court of Ransom county and admitted to bail in the sum of $1000.00. On December 14, 1936 the action came on for trial in said county court. The defendant interposed a demurrer to the criminal infor-

mation on the ground that such information failed to state facts sufficient to constitute a public offense. The demurrer was overruled. Thereupon the defendant entered a plea of guilty and was sentenced to imprisonment in the county jail and to pay a fine. Thereafter the defendant moved in arrest of judgment. The motion was overruled and the instant appeal was taken from the judgment and from the order denying the motion in arrest of judgment.

Appellant contends that when the liquor control act became effective all laws then in existence making it a crime to engage in the liquor traffic and all penalties and punishments prescribed by such laws for violation thereof were abrogated. The respondent, on the other hand, contends that the liquor control act did not operate to repeal all existing laws relating to liquor traffic; that it operated to repeal only laws relating to such traffic to the extent that such former laws were in clear conflict with the provisions of the liquor control act and then only to the extent of such conflict; and that the provisions of law which the defendant is charged with having violated were not so inconsistent with the provisions of the liquor control act as to be repealed by the latter. The respondent further contends that even though the liquor control act did operate to repeal the provisions of law which the defendant is charged with having violated, that nevertheless the penalty or punishment prescribed by such law for a violation thereof were not repealed but remained in full force and effect under the provisions of § 7316, Comp. Laws 1913, which reads: "The repeal of any statute. *by the legislative assembly* shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so express ly provide and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability."

In our opinion respondent's latter contention is well founded, and § 7316, supra, operates to continue in full force and effect the punishment prescribed by the laws of this state for unlawfully engaging in the liquor traffic, even though the law creating such offense has been wholly repealed.

It is definitely settled that § 7316, supra, applies to criminal cases.

State ex rel. Snodgrass v. French, 32 N. D. 362, 155 N. W. 687. But appellant contends that this statute applies only where "the legislative assembly" repeals a statute and that it does not apply where a statute is repealed by statute enacted pursuant to initiative petition.

In our opinion appellant's contention is not well founded. Section 7316, supra, was first adopted in this jurisdiction in 1877 as a part of the Code of the Territory of Dakota. Civil Code 1877, § 2133. The statute was borrowed from the Federal statutes. See § 13, chap. 2, title 1, U. S. Rev. Stat. 1878 (1 U. S. C. A. § 29). The territorial legislature adopted the Federal statute verbatim with the single exception that it inserted the words which we have italicized. That is, the territorial legislature inserted the words "by the legislative assembly." The statute as enacted by the territorial legislature has been retained without change. On the establishment of statehood it was retained in force by virtue of the provisions of the state constitution. Constitution, N. D., Schedule § 2. When enacted by the territorial legislature there was a clear and valid reason why the words "by the legislative assembly" should have been inserted in the statute which had been borrowed from the Federal statutes. The territorial legislative assembly, in fact, the entire territorial government was exercising such powers and such powers only as had been delegated by the acts of Congress. 62 C. J. p. 796. The powers granted to the territorial legislature were at all times subject to such modifications as Congress might see fit to adopt. Ibid. Congress had power not only to modify or alter the powers of the territorial legislature; it had power at any time it saw fit so to do to legislate directly for the local government or local affairs of the territory. 62 C. J. 798. It had "the power of supervision over the legislative body" of the territory and it might at any time it saw fit so to do "annul or abrogate, invalidate or amend, the acts of the territorial legislature, even in the absence of an express reservation of power in this regard." 62 C. J. 799.

Hence, at the time the statute in question here was enacted by the territorial legislature there was another legislative body that had powers paramount to that of the territorial legislature, namely, Congress. The insertion by the territorial legislature in the statute which

it borrowed from the Federal statutes of words restricting the application of the statute to acts of the territorial legislature was therefore eminently proper. It was a recognition of the limitations of the powers of the territorial legislature and negatived any intention on its part that the statute should apply to any act that Congress might itself enact for the territory of Dakota. There was, however, a clear and unmistakable legislative intention that the statute should apply to all laws enacted by the territorial legislature.

Upon the establishment of the government of the state of North Dakota all legislative power was vested in the legislative assembly (N. D. Const. § 25) and the words "by the legislative assembly" in the territorial statute as continued in force by the provisions of the constitution became surplusage. The same is true when the statute subsequently was embodied in a revision or compilation of the laws of the state. When it was adopted as a part of the Civil Code in 1895 the unquestioned legislative intention was that the statute should apply to all laws that might be enacted thereafter by the lawmaking power in the state. In the very nature of things the lawmakers could not at that time have had any intention that the statute should not be applicable to any laws that in future years might be enacted pursuant to initiative petition as the initiative method of proposing legislation did not come into being for more than thirty years thereafter.

In other words, when § 7316, supra, was enacted by the legislative assembly in 1895 it was clearly the legislative intention that the statute should apply to every statutory enactment in North Dakota; and the words "by the legislative assembly" were surplusage. Hodges v. Dawdy, 104 Ark. 583, 149 S. W. 656.

Nothing was said in the constitutional amendment to indicate any intention that a statute enacted pursuant to the initiative should have any status or effect as a rule of action different from a statute enacted by the legislative assembly. So far as material here the constitutional amendment (N. D. Const. § 25, as Amended; Laws 1919, p. 503) provided:

"The legislative power of this state shall be vested in a legislature consisting of a senate and a house of representatives. The people,

however, reserve the power, first, to propose measures and to enact or reject the same at the polls; second, to approve or reject at the polls any measure or any item, section, part or parts of any measure enacted by the legislature. . . .

"The veto power of the governor shall not extend to the measures initiated by or referred to the electors. No measures enacted or approved by a vote of the electors shall be repealed or amended by the legislature, except upon a yea and nay vote upon roll call of two thirds of all the members elected to each house.

"This section shall be self-executing and all of its provisions shall be treated as mandatory. Laws may be enacted to facilitate its operation, but no law shall be enacted to hamper, restrict or impair the exercise of the rights herein reserved to the people."

It will be noted that the constitutional amendment emphatically declares that the legislative power shall be vested in the legislative assembly, with power reserved to the people to initiate or refer laws. The particulars in which an initiated measure differs from one enacted by the legislative assembly are those, and those only, which are specified in the constitutional provision, namely, that the Governor has no power of veto, and that such measure may not be amended or repealed by the legislative assembly "except upon a yea and nay vote upon roll call of two-thirds of all the members elected to each house."

Under this constitutional provision the legislative assembly and the people are in effect coordinate legislative bodies with co-extensive legislative power; a law enacted by one has no superior position as a rule of conduct over one enacted by the other; a law enacted by one is subject to the same rules of construction and the same tests of constitutionality as one enacted by the other. 59 C. J. 686; Baird v. Burke County, 53 N. D. 140, 205 N. W. 17; Com. v. Higgins, 277 Mass. 191, 178 N. E. 536, 79 A.L.R. 1304; State ex rel. Richards v. Whisman, 36 S. D. 260, 154 N. W. 707, L.R.A.1917B, 1; Kadderly v. Portland, 44 Or. 118, 74 P. 710, 75 P. 222; Preckel v. Byrne, 62 N. D. 634, 244 N. W. 781.

Corpus Juris (59 C. J. p. 687, § 233) says:

"Through the initiative the people are a coordinate legislative body with co-extensive legislative power, exercising the same power of sov-

ereignty in passing upon measures as that exercised by the legislature in passing laws. Statutes enacted by the people directly under the initiative are of equal dignity with those passed by the legislature, for the result is the same in either case. Although the constitutionality of an initiative enactment is prima facie presumed, when acting as a legislative body the people can no more transgress the constitution than can the legislative assembly."

In Baird v. Burke County, 53 N. D. 140, 205 N. W. 17, supra, this court said:

"The state Constitution is a limitation, not a grant of power; it is, in this respect, fundamentally different from the Federal Constitution, which is a grant of power to the Federal Government. The state legislature, therefore, has full power of legislation except as limited by the Federal or the state Constitution. The initiative and the referendum neither add to nor subtract from that power; except as its scope is restricted by constitutional limitations, the power is still plenary in the legislature. Though the people have reserved legislative power, the representative character of the government is fully retained. . . .

"It may, therefore, be postulated that these new constitutional provisions have not in any manner altered the fundamental purpose of legislation—to make every statute enacted by the legislature speak the will of the majority of the legislative agents chosen by the people. The statute represents the will, purpose or intention of the lawmaker. Be the lawmaker the legislature or the people, through the initiative, this fundamental rule is the same."

We are all agreed that § 7316, supra, is as applicable to a statute enacted pursuant to the initiative as to a statute enacted by the legislative assembly.

The holding of the Supreme Court of the United States in United States v. Chambers, 291 U. S. 217, 78 L. ed. 763, 54 S. Ct. 434, 89 A.L.R. 1510, is not applicable to the facts here. The power of Congress to enact the national prohibition act rested upon the grant of such power contained in the Eighteenth Amendment. When the Eighteenth Amendment was repealed the congressional power to enact such legislation vanished. That is not the situation in this state. The

legislative power to make it an offense to engage in the liquor traffic did not spring from power granted in the constitution. The legislature had plenary power to enact such legislation, and the legislative enactments making it a public offense to engage in the liquor traffic remained in full force and effect notwithstanding the repeal of the prohibitory provision in the state constitution. Re Aipperspach, 63 N. D. 358, 248 N. W. 488.

Judgment appealed from is affirmed.

BURR, NUESSLE, BURKE and MORRIS, JJ., concur.