COCHRAN, MAYOR *v.* BLACK

5-3802                                400 S. W. 2d 280

Opinion delivered February 28, 1966
[Rehearing denied April 4, 1966.]

*Smith, Williams, Friday & Bowen,* By: *John T. Williams* and *Frank Warden, Jr.,* for appellant.

*Frierson, Walker & Snellgrove,* By: *G. D. Walker,* for appellee.

OSRO COBB, Justice. The General Assembly of 1937 passed Act 298, which authorized the creation of local housing authorities by counties and by cities of the first class. Act 69 of 1961 amended the statute to make it applicable to the cities of the second class. These statutory provisions now appear as Ark. Stat. Ann. §§ 19-3001—19-3034 (Repl. 1956 and Supp. 1965).

On February 12, 1963, the City Council of Corning, a city of the second class, purportedly passed two Resolutions for the purpose of approving a Housing Authority; declaring the need of same; creating and activating said Housing Authority; and authorizing the designation of commissioners to operate same.

On August 3, 1964, citizens of Corning opposed to the local Housing Authority and desiring to terminate

same filed with the City Clerk petitions to initiate an ordinance to be known as Initiative Ordinance No. 1, which expressly provided for the repeal of said Resolutions of February 12, 1963. Some 15 per cent of the qualified electors in the municipality joined in the petitions and the matter was placed on the ballot for the general election of 1964.

On August 15, 1964, appellees filed their complaint against appellants in the Chancery Court, challenging the validity of the Resolutions of February 12, 1963, and seeking an order temporarily enjoining and restraining the Mayor of the City of Corning and others from any activities of assistance or cooperation with the Housing Authority. The court continued hearing on the merits of the complaint until February 23, 1965, a date subsequent to the general election held on November 3, 1964.

At the general election, the Initiative Ordinance No. 1, to repeal the Resolutions of February 12, 1963 and for other related purposes, was adopted by a vote of 519 to 347, and it has been stipulated between the parties that all technical requirements in connection with the conduct of the election were satisfied.

On June 30, 1965, the Chancellor entered a decree setting forth that both Resolutions of February 12, 1963, were repealed by Initiative Ordinance No. 1 and that the Housing Authority of the City of Corning ceased to exist as a legal entity from and after November 3, 1964. The decree set forth that remaining issues as to the alleged invalidity of the Resolutions creating the Housing Authority were moot, requiring no finding thereon.

Appellants are now before us urging that the Chancellor erred in entering the decree of June 30, 1965, and they contend that the Housing Authority was not and could not have been legally dissolved or terminated by Initiative Ordinance No. 1 adopted by vote of the people..

Our initiative and referendum amendment to our

Constitution, Amendment No. 7, reserves to the people full power to refer measures enacted to a vote of the people, and likewise full power to propose legislative measures for enactment by vote of the people. Furthermore, the amendment specifically extends said powers to municipalities and counties. The word "measure" as it relates to the legislative process is defined in Amendmest No. 7 as follows:

"The word 'measure' as used herein includes any bill, law, resolution, ordinance, charter, constitutional amendment or legislative proposal or enactment of any character."

In *Scroggins* v. *Kerr,* 217 Ark. 137, 228 S. W. 2d 995, it was contended that the legislative function as to the creation of local housing authorities was entirely embraced within Act 298 of 1937 of our General Assembly, and that supplementary resolutions or ordinances of the municipalities were administrative in character instead of legislative, and thus beyond the provisions of constitutional Amendment No. 7. However, this court, in a unanimous opinion, held that the ordinance authorizing the cooperation agreement with the Housing Authority was legislative in character and could properly be reached by referendum procedures. Use of the initiative portion of Amendment No. 7 was not directly involved in *Scroggins* v. *Kerr,* supra.

The real question before this court, therefore, is whether Initiative Ordinance No. 1 is legislative in character. If so, there can be no question as to the propriety of the use of the initiative in submitting the ordinance to a vote of the people.

Ark. Stat. Ann. § 19-3031 (Repl. 1956) provides that municipalities creating and activating housing authorities shall accept the obligation of making an estimate of the amount of money necessary for the administrative expenses and overhead of such authority during its first year of operation, and shall appropriate

such amount to the authority out of any moneys in the treasury of such city not appropriated to some other purposes, said moneys being paid to the authority as a donation; and that the municipality may thereafter, from time to time, lend or donate additional money appropriated from the city treasury. One of the apparent purposes, therefore, of Initiative Ordinance No. 1 was to erase the possibility of city funds being appropriated and provided to the Housing Authority either as loans or as donations. The appropriation of public money is specifically set forth as one of the acts to which the power is reserved to the people to approve or reject at the polls under § 1 of constitutional Amendment No. 7.

The power to create a corporation, either public or private, is a "legislative function." *Board of Directors of Northern Wasco County Peoples' Utility Dist.* v. *Kelly,* 137 P. 2d 295, 171 Or. 691. Dissolution of corporation is likewise primarily a "legislative function." *Hurley* v. *Boston R. Holding Co.,* 54 N. E. 2d 183.

The first language appearing in Ark. Stat. Ann. § 19-3004 (Repl. 1956) reads as follows: "In each city (as herein defined) and in each county of the State there is hereby created a public body corporate and politic to be known as the 'Housing Authority' of the city or county; . . . " It would appear, therefore, that the *Kelly* and *Hurley* cases, supra, are directly in point as to the proposal of the ordinance is question to dissolve the Housing Authority as activated by the municipality.

Furthermore, the essentials of the "legislative function" are the determination of legislative policy and its formulation and promulgation as a defined and binding rule of conduct. *Yakus* v. *United States,* 321 U. S. 414, 88 L. Ed. 834. Also see *Kiyoshi Hirabayashi* v. *United States,* 320 U. S. 81, 87 L. Ed. 1774.

We are firmly committed to a liberal construction of constitutional Amendment No. 7, bearing in mind the purpose of its adoption and the object it sought to ac-

complish. This amendment provides a necessary and potent protection against ill-advised, oppressive or improvident legislative functions, and actions of the electors thereunder, in attempting to obtain relief, should not be thwarted by strict or technical construction. We are neither authorized nor remotely inclined to disturb the proper application of this wholesome constitutional reservation of power to the people. See *Leigh & Thomas* v. *Hall, Secretary of State,* 232 Ark. 558, 339 S. W. 2d 104; *Reeves* v. *Smith,* 190 Ark. 213, 78 S. W. 2d 72; *Ferrell* v. *Keel,* 105 Ark. 380, 151 S. W. 269.

We have concluded that Initiative Ordinance No. 1 is legislative in character in that it sets forth definite legislative proposals, to-wit: the repeal of all actions taken by the city in activating the local Housing Authority; the establishment of a policy contrary to a local Housing Authority, and the complete termination and effective dissolution of the existing local Housing Authority and its Board of Commissioners. It must follow, therefore, that said ordinance was fully authorized under Amendment No. 7 to the Constitution.

The decree of the Chancery Court sustaining the validity of Initiative Ordinance No. 1 is affirmed.