Chris CHRISTENSEN and Clifford Bergeleen, Petitioners and Appellees,

v.

Larry CARSON, Mark Brodkorb, Kenneth Gohring, Charlie Jost, Don Werly, and Lee Johnson, Individually and as Members of the City Council of the City of Wessington Springs, South Dakota; and Brian Bergeleen, Individually and as Mayor of the City of Wessington Springs, South Dakota, Defendants and Appellants.

No. 18717.

Supreme Court of South Dakota.

Argued Nov. 29, 1994.

Reassigned March 28, 1995.

Decided June 21, 1995.

Jeffrey D. Larson of Larson & Nipe, Woonsocket, for petitioners and appellees.

Casey N. Bridgman of Bridgman & Adel, Wessington Springs, for defendants and appellants.

ROBERT A. MILLER, Chief Justice (on reassignment).

City appeals from trial court's grant of writ of mandamus compelling a vote on an initiated city ordinance. We reverse and remand.

## FACTS

The City Council of the City of Wessington Springs (City) seeks to establish a municipal airport. After a series of informational meetings, the Wessington Springs Municipal Airport project was included in the National Plan of Integrated Airport Systems on May 16, 1990. A local Airport Advisory Board was established on September 12, 1990. Appropriations for the airport project are included in the City's annual budget. City hired consulting engineers to assist in planning the Airport. On August 5, 1991, City created its Airport Board under SDCL ch. 50–6. In a grant agreement with City, the Department of Transportation, Federal Aviation Administration (FAA), agreed to pay ninety percent of the planning costs for the project.

On November 4, 1991, the City entered into an Agency Agreement with the South Dakota Department of Transportation, providing that the development of the airport is in accord with the objectives and purposes of the State, for a public purpose, and to the benefit of the State. Although $18,892.47 has been spent on the airport project, only $1,889.24 are city funds.

Appellees Chris Christensen and Clifford Bergeleen (hereinafter collectively referred to as Christensen) presented an initiated petition to City on June 7, 1993, which stated:

## AIRPORTS OR LANDING FIELDS

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF WESSINGTON SPRINGS, SOUTH DAKOTA, AS FOLLOWS:

SECTION 1. The City of Wessington Springs shall not acquire, establish, construct, own, control, lease, equip, improve, maintain, operate, or regulate any airports or landing fields for the use of airplanes or other aircraft within or without the corporate limits of the City of Wessington Springs, South Dakota.

SECTION 2. The grass landing strip the City of Wessington Springs has long had an interest in may continue to be used in the same manner as it has in the past, but it is otherwise subject to Section 1.

City rejected the petition as beyond the proper scope for initiated action. Christensen sought a writ of mandamus to compel a public vote on the proposed ordinance. The trial court denied Christensen's request, holding that the initiated measure would impermissibly abrogate legislative power given to the city by state statute.

On November 1, 1993, Christensen submitted a new initiated measure to the city finance officer, which stated:

## AIRPORTS OR LANDING FIELDS

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF WESSINGTON SPRINGS, SOUTH DAKOTA, AS FOLLOWS:

SECTION 1. The City of Wessington Springs, recognizing the discretionary authority granted in SDCL 50–7–2, hereby elects to cease any and all activities relating to the acquisition, establishment, or construction of a new airport facility or landing field, for a term and period of one (1) year from the date this Ordinance takes effect, in accordance with SDCL 9–20–17.

SECTION 2. This Ordinance is specifically not intended to abrogate any State Statute.

City rejected the petition as beyond the proper scope of the initiative process. Christensen sought a writ of mandamus to force the initiative to a public vote. The trial court granted the request for writ of mandamus, holding that the initiated measure only sought to delay implementation of legislative power granted to the city and did not abrogate the power itself. City appeals.

## ISSUE

### IS THE PROPOSED ORDINANCE WITHIN THE PROPER SCOPE OF THE INITIATIVE POWER?

We are asked to determine whether the proposed ordinance of November 1, 1993, falls within the scope of the initiative process outlined in the South Dakota Constitution and SDCL 9–20–18 and –19. Statutory construction is a matter of law and we consider such decisions without deference to the decision of the trial court. *Rural Pennington Cty. Tax Ass'n v. Dier*, 515 N.W.2d 841, 843 (S.D.1994). We determine the intent of a statute from the statute as a whole, from its language, and by giving it its plain, ordinary and popular meaning. *Id.*

South Dakota Constitution, art. III, § 1, provides to the people the right to refer legislative acts to a public vote.* Municipalities are specifically subject to initiative and referendum. *Id.* Unfortunately, Christensen confuses the powers of initiative and referendum and mistakenly assumes that an initiative may be used, like a referendum, to repeal or amend previously passed legislation. Settled South Dakota law does not permit this result. The South Dakota Constitution, the South Dakota Code, and settled South Dakota case law clearly distinguish between initiative and referendum measures.

In *Byre v. City of Chamberlain*, 362 N.W.2d 69 (S.D.1985), we differentiated between an initiative and a referendum as follows:

> Initiative is the constitutional reservation of power in the people to propose bills and laws and to enact or reject them at the polls independent of the legislative assembly. Referendum, on the other hand, is a right constitutionally reserved to the people of the state or local subdivisions thereof to have submitted for their approval or rejection any act, or part of any act, passed by the legislature which in most cases would, without action on the part of the electorate, become a law.

*Id.* at 79 (citing 82 C.J.S. *Statutes* § 115 (1953)). Initiative, then, refers to a proposal which originates with the people, while a referendum is a reaction to measures initiated by the government. Christensen's petition was a reaction to City's plan to establish an airport and, therefore, constituted a referendum rather than an initiative.

The distinction between initiative and referendum was further explored in *Byre:*

> The purpose of the initiative *is not to curtail or limit legislative power to enact laws,* but rather to compel enactment of measures desired by the people, and to empower the people, *in the event the legislature fails to act,* to enact such measures themselves. The purpose of referendum is to suspend or annul laws which are not yet effective in order to provide the people a means of expressing their desire regarding a legislative proposition.... When the referendum is triggered, the people must approve a legislative proposition before it becomes operative as a law.

*Id.* at 79 (citing 82 C.J.S. *Statutes* § 115 (1953)) (emphasis added).

Christensen's petition cannot be reconciled with the *Byre* court's careful distinction between initiative and referendum. Here, the municipal governing body did not fail to act. On the contrary, the municipality had taken the initial steps toward establishing an airport. The effect of the petition by Christensen was to "suspend or annul" City's existing efforts to establish an airport. Based on these facts and the definitions supplied by *Byre,* the petitions submitted by Christensen to prevent or delay development of the airport were referenda, not initiatives.

---

* In 1898, South Dakota enacted an amendment to art. III, § 1 permitting initiative and referendum at the state and municipal levels. Chip J. Lowe, *Restrictions on Initiative And Referendum Powers in South Dakota,* 28 S.D.L.Rev. 53–54 (1982). In so doing, South Dakota became the first state to reserve legislative powers to the people. *Id.* at 53. State statutes have since extended this "legislative prerogative of the electorate" to counties, conservation districts, and school districts. *Id.* at 54 (citing SDCL ch. 7–18A; SDCL 38–8A–12; SDCL 13–6–41 to 49). Other statutes allow particular issues to be submitted to a public vote. *Id.* at 54 (citing SDCL 38–27–18; SDCL 11–2–22; SDCL Ch. 35–3; SDCL 9–4–4.9). As one author observed: "Voter approval is nothing new in South Dakota government." *Id.*

■ The importance of distinguishing between initiative and referendum petitions is evident in our own state constitution. Article III, § 1, of the South Dakota Constitution provides, in pertinent part:

The legislative power of the state shall be vested in a Legislature which shall consist of a senate and house of representatives. However, the people expressly reserve to themselves the right to propose measures, which shall be submitted to a vote of the electors of the state, and also the right to require that any laws which the Legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions....

... This section shall apply to municipalities....

While the constitution reserves both initiative and referendum powers to the people, it excepts from the referendum process any laws which were enacted "for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions." S.D. Const. art. III, § 1. This exception does not apply to the initiative process, *id.; Byre,* 362 N.W.2d at 79, presumably because initiatives are not intended to affect existing laws. If we were to allow the distinction between initiative and referendum to be blurred, as Christensen seems to suggest, voters could avoid the restrictions on the referendum power by simply fashioning their petition in the form of an initiative. We refuse to endorse this result, because doing so would effectively nullify a constitutional provision.

Similarly, in order to uphold Christensen's petition, we would have to ignore important statutory distinctions between an initiative and a referendum. SDCL 9–20–19 defines the types of government decisions which are subject to referendum and provides:

Any legislative decision of a governing body is subject to the referendum process. A legislative decision is one that enacts a permanent law or lays down a rule of conduct or course of policy for the guid-ance of citizens or their officers. Any matter of a permanent or general character is a legislative decision.

No administrative decision of a governing body is subject to the referendum process, unless specifically authorized by this code. An administrative decision is one that merely puts into execution a plan already adopted by the governing body itself or by the Legislature. Supervision of a program is an administrative decision. Hiring, disciplining and setting the salaries of employees are administrative decisions.

Importantly, while this statute excepts administrative decisions from the referendum process, it makes no mention of the initiative power. There is a good reason for this omission. The legislature recognized that only a referendum is designed to pass on existing laws; no restrictions on initiative powers were necessary, because initiatives were not intended to conflict with or repeal current laws. If we fail to recognize the distinction between initiative and referendum set forth in *Byre,* in the future, every municipal administrative decision could be challenged by the electorate through the initiative process. That would represent a significant departure from the settled law of this state.

■ Because Christensen's petition is a referendum rather than a petition, he must satisfy the procedural requirements associated with the referendum process. However, he fails to meet these requirements. First, SDCL 9–20–7 mandates that a referendum petition contain the title of the ordinance, the subject of the resolution, or the portion of the ordinance or resolution under consideration. Christensen, in improperly writing his petitions in the form of initiatives, did not identify any existing resolutions or ordinances to be considered. Second, SDCL 9–20–6 requires that a referendum petition be filed "within twenty days after the publication of any ordinance or resolution subject to referendum." The record fails to identify any city ordinance or resolution concerning the airport which falls within the twenty-day period predating Christensen's petitions of either June 7, 1993, or November 1, 1993.

Because Christensen failed to properly file a referendum petition, we reverse the trial

court's grant of a writ of mandamus and remand for further proceedings consistent with this opinion. Having invalidated the petition on these procedural grounds, we need not address the other arguments raised in this appeal.

Reversed and remanded.

AMUNDSON and KONENKAMP, JJ., concur.

SABERS, J., and WUEST, Retired J., dissent.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted, did not participate.

SABERS, Justice (dissenting).

**The proposed ordinance is within the proper scope of the initiative power.**

South Dakota Constitution, art. III, § 1 provides to the people the right to refer legislative acts to a public vote. Municipalities are specifically subject to initiative and referendum. *Id.* South Dakota was the first state to reserve legislative powers to its citizens by initiative and referendum. *Wyatt v. Kundert,* 375 N.W.2d 186, 192 (S.D.1985). "Initiative is the constitutional reservation of power in the people to propose bills and laws and to enact or reject them at the polls independent of the legislative assembly." *Byre v. City of Chamberlain,* 362 N.W.2d 69, 79 (S.D.1985).

Legislative matters of a municipality are subject to initiative and referendum unless specifically excluded by statute. *Id.; see* SDCL 9–20–18 and 9–20–19 [1] (excluding administrative acts only). In *Wang v. Patterson,* 469 N.W.2d 577, 580 (S.D.1991), we stated that "[w]here discretion is left to the local government as to what it may do, when the local government acts, it acts legislatively

and its actions are subject to normal referendum procedure." *Id.* (quoting 5 E. McQuillin, *The Law of Municipal Corporations,* § 16.55 (3rd ed. 1989)). "Where a matter is of local rather than statewide concern, a local decision which is intrinsically legislative retains that character even in the presence of a state law authorizing or setting limits on the particular field of action." 5 McQuillin, at § 16.55.

*Wang* involved the planning of a municipal airport and whether a condemnation action was subject to referendum. 469 N.W.2d at 577–78. In upholding the citizens' right to refer the matter to a referendum, we apply a "liberal rule of construction permitting rather than preventing . . . citizens from exercising their powers of referendum." *Id. Wang* held that unless the Airport Master Plan directed the condemnation of specific land, the City retained discretion; if so, then it was subject to the referendum process as a legislative act. *Id.*

Our task is to determine whether some key act performed by the Council removed discretion from any further action by City regarding the Airport, making it an administrative matter. *Wang,* 469 N.W.2d at 579–80. Council claims that SDCL ch. 50–7 is a specific grant of authority and $18,892.47 has been spent planning for the Airport. It claims its Airport matters are administrative only and therefore, beyond the reach of the initiative or referendum process. *See Id.* City has entered into agreements with the State and the FAA, and has hired consulting engineers. However, the proposed Master Plan does not apprise citizens of any specific future action by the Airport Board or the City. *See Id.; Baker v. Jackson,* 372 N.W.2d 142, 147 (S.D.1985) (holding abrogated by SDCL 9–20–18 which provides that decision-making authority granted to municipal governing bodies is subject to initiative and ref-

1. SDCL 9–20–19 provides:

Any legislative decision of a governing body is subject to the referendum process. A legislative decision is one that enacts a permanent law or lays down a rule of conduct or course of policy for the guidance of citizens or their officers. Any matter of a permanent or general character is a legislative decision.

No administrative decision of a governing body is subject to the referendum process, un-

less specifically authorized by this code. An administrative decision is one that merely puts into execution a plan already adopted by the governing body itself or by the Legislature. Supervision of a program is an administrative decision. Hiring, disciplining and setting the salaries of employees are administrative decisions.

*Id.*

erendum unless otherwise excluded). City has retained discretionary authority for approving the site of the Airport. No land has been acquired or subjected to condemnation through the power of eminent domain. Construction plans have not been approved or made public. No other concrete action has been taken which would apprise citizens of future actions by City. The City has not even attained the same stage of development reached in *Wang,* which we held to be legislative. 469 N.W.2d at 579–80. Therefore, the Airport involves legislative rather than administrative matters. *Id.*

The people are on equal footing with the municipality in their power to make laws concerning legislative matters under the initiative process. *See State v. Houge,* 67 N.D. 251, 271 N.W. 677, 680 (1937) (citation omitted); Klosterman v. Marsh, 143 N.W.2d 744, 748 (Neb.1966). An initiative may conflict with or repeal legislation previously passed by a municipal council. 5 McQuillin, at § 16.52. The initiative may be used to amend or propose new legislation reaching *any* legislative matter. *State ex rel. Sharpe v. Hitt,* 155 Ohio St. 529, 99 N.E.2d 659, 664 (1951); 5 McQuillin, at § 16.52; SDCL 9–20–18 and 19. We should not abridge the right of the people to use the initiative process except upon a clear showing that the proposed law is unconstitutional. *Laam v. McLaren,* 28 Cal.App. 632, 153 P. 985, 988 (Cal.App.3rd 1915). Therefore, if the scope of the ordinance is proper for passage by a city council, it is proper for the municipality's citizens to have an initiated petition covering the same subject matter. *Houge,* 271 N.W. at 680; *State ex rel. Boyer v. Grady,* 201 Neb. 360, 269 N.W.2d 73, 77 (1978); *see*

SDCL 9–20–19 (excluding administrative matters only).

Under SDCL ch. 50–7,[2] the City is given the power to establish an airport. No specific procedures are delineated which would make the power administrative only. SDCL ch. 50–7; *Wang,* 469 N.W.2d at 580. No statewide policy is established: only the authority to establish and maintain airports is granted to municipalities *if* they choose to exercise that discretion. *Id.; see* 5 McQuillin, at § 16.55. This is enabling legislation only, not mandatory legislation. City's actions under SDCL ch. 50–7 are discretionary until they are specifically delineated in a City ordinance. The Council could enact an ordinance choosing not to exercise its discretionary power to establish an airport. Therefore, the municipality's citizens may also enact such an ordinance by the initiative process.

The majority relies heavily on *Byre,* 362 N.W.2d at 79, which set forth distinctions between initiative and referendum. The defect in the majority's analysis is the fact that it overlooks *Byre's* own language:

Initiative is the constitutional reservation of power in the people to propose bills and laws and to enact *or reject them* at the polls *independent of the legislative assembly* [.]

*Id.* at 79 (emphasis added).

I recognize that *Byre* provides distinctions between initiative and referendum, but those distinctions do not control the facts of this case. *Byre,* 362 N.W.2d at 79, relies upon 82 C.J.S. *Statutes* § 116 (1953), which cites *State ex rel. Richards v. Whisman,* 36 S.D. 260, 272, 154 N.W. 707, 711 (1915). *Whisman* stated:

The fact that the people themselves may propose or enact laws in connection with the Legislature in no manner conflicts with

---

**2.** SDCL 50–7–2 provides in part:

The board of county commissioners of any county in this state is hereby *authorized* to acquire, establish, construct, own, control, lease, equip, improve, maintain, operate, and regulate airports or landing fields for the use of airplanes and other aircraft within the limits of such counties, and *may* use for such purpose

or purposes any property suitable therefor that is now or may at any time hereafter be owned or controlled by such county. *The same power and jurisdiction is hereby provided for municipalities* except that any municipality *may* exercise such powers either within or without the corporate limits of such municipality....

*Id.* (emphasis added).

or prohibits the Legislature from itself also enacting the *same* law that might be desired by the people. If the Legislature of its own volition should enact the *same* law desired by the people, the initiative would then become unnecessary and useless as to such law. The evident purpose of this constitutional amendment was not to curtail or limit the powers of the Legislature to enact laws, but the purpose was to compel enactment by the Legislature of measures desired by the people, and, if the Legislature neglected to act as so desired by the people, that then the people by means of the initiative might enact such measures into laws themselves.... The *only* prohibition or inhibition or limitation in relation to legislative power appearing in the initiative portion of the amendment is that which relates to the veto power [of the executive].

*Id.* 154 N.W. at 709–10 (emphasis added).

The phrase "in the event the legislature fails to act" in *Byre*, 362 N.W.2d at 79, refers to the Legislature's failure to act on the "*same* law that might be desired by the

people." *Whisman*, 154 N.W. at 709. Therefore, the majority's proposition that the initiative cannot be used if the municipality has in any manner acted upon the subject is not supported by its own authorities. *Whisman*, 154 N.W. at 711, held that the people are on equal footing with the Legislature and that the Legislature may repeal or amend initiated laws. *Id.* (citing *Kadderly v. Portland*, 44 Or. 118, 74 P. 710 (1903)). *See State ex rel. Wegner v. Pyle*, 55 S.D. 269, 272, 226 N.W. 280, 281 (1929) ("[The Legislature's] power is only concurrent with the power of the people to initiate a law on *any* subject.") (emphasis added). The majority has confused the power of the municipality to amend or repeal the initiative once it becomes law with the municipality's refusal to allow a public vote of a measure initiated by the people.[3]

If an initiative can propose bills and laws and enact or *reject them*, it certainly can be used to stay, freeze or halt activity for a

---

**3.** *Whisman*, 154 N.W. at 710, notes that Arkansas, Colorado, Missouri, Montana, Nebraska, Oklahoma, Oregon, and Ohio have similar constitutional provisions on initiative and referendum. None of these states have restricted the scope of the initiative power to exclude initiatives which affect existing laws even if they affect only legislative matters. In *Amalgamated Transit Union–Div. 757 v. Yerkovich*, 24 Or.App. 221, 545 P.2d 1401, 1403 (1976), the Court of Appeals of Oregon held that an initiative can propose any measure for any legislative matter, while excluding any measure for an administrative matter. However, an initiated measure may first be scrutinized to determine if it reaches a legislative matter. *Id.* 545 P.2d at 1404 n. 7 (citation omitted). In determining the scope of the initiative power and its ramifications, we cited an Oregon case, *Kadderly*, 74 P. 710. *Whisman*, 154 N.W. at 711.

The Nebraska Supreme Court, in interpreting its similar initiative and referendum constitutional provisions, has placed the people and the legislative body on equal footing:

Under Nebraska constitutional provisions vesting the legislative power of the state in the Legislature, but reserving to the people the right of initiative and referendum, the Legislature, on the one hand, and the electorate on the other, are coordinate legislative bodies,

and there is no superiority of power between the two. In the absence of specific constitutional restraint, *either may amend or repeal the enactments of the other.*

*Klosterman*, 143 N.W.2d at 748 (citation omitted) (emphasis added).

Montana has also placed the legislature and the people on equal footing in their power to enact laws through the initiative process. *State ex. rel. Jones v. Erickson*, 75 Mont. 429, 244 P. 287, 290 (1926). "[N]o distinction ... is made between the two methods of enacting laws in this state." *Id.* (citation omitted). As long as the initiated measure complies with constitutional requirements, it is valid. *Id.*

Other states having similar constitutional provisions have held that the initiative may reach any legislative matter. The Ohio Supreme Court has held that the initiative may be used to amend or propose new legislation reaching any legislative matter. *Sharpe*, 99 N.E.2d at 664. The Supreme Court of Arkansas has held that the initiative may reach any legislative matter, even if it affects or repeals actions taken by a municipality. *Cochran v. Black*, 240 Ark. 393, 400 S.W.2d 280, 282–83 (1966). In *Cochran*, 400 S.W.2d at 283, the initiated measure was upheld even though it repealed all actions taken by the city in activating the local Housing Authority, and dissolved the local Housing Authority.

period of time. *Byre,* 362 N.W.2d at 79. The Council's remedy is to set the matter *for* a vote of the people, not to *delay* the vote of the people. At this time, less than $2,000 of the City's funds have been spent on the project. Why prolong the agony of a public vote until thousands and thousands of dollars are spent, only to find out that the people do not want to pay for an airport?

Therefore, we should affirm the trial court.[4]

WUEST, Retired J., joins this dissent.

---

4. The majority states that without "the distinction between initiative and referendum[,] ... every municipal *administrative* decision could be challenged by the electorate through the initiative process." Administrative decisions cannot be challenged by the initiative and referendum process. SDCL 9–20–19. However, the majority has not shown that the proposed initiative involves an administrative matter. The Airport involves a legislative matter. *See Wang,* 469 N.W.2d at 580. Also, the majority states *"presumably* ... initiatives are not intended to affect existing laws." (Emphasis added). No authority is given.